**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division**

KITRON A. WEDDING, *pro se,*

      Plaintiff,

v.                                Civil Action No. 4:25-cv-143-RBS-LRL

HUNTINGTON INGALLS INCORPORATED,

      Defendant.

**DEFENDANT'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR
JUDGMENT ON THE PLEADINGS**

Defendant Huntington Ingalls Incorporated ("HII"), by counsel, for its Memorandum in

Support of its Motion for Judgment on the Pleadings, pursuant to Rule 12(c) of the Federal Rules

of Civil Procedure, states as follows:

**FACTUAL AND PROCEDURAL BACKGROUND**

**I.      FACTUAL ALLEGATIONS**

The facts outlined herein are derived from Mr. Wedding's Complaint[1] (ECF No. 1,

"Comp."), all facts in HII's Answer that do not conflict with the Complaint (ECF No. 6,

"Answer"),[2] Mr. Wedding's Charge of Discrimination filed with the Equal Employment

Opportunity Commission, (ECF No. 1, attach. 3 at 1-2, "EEOC Charge"), the EEOC's

Determination and Notice of Rights, (ECF No. 1, attach. 2 at 1-2, "EEOC Closure Notice"), the

---

[1] The facts in the Complaint are assumed as true for purposes of this Motion for Judgment on the Pleadings only.

[2] "[U]nlike on a Rule 12(b)(6) motion, on a Rule 12(c) motion the Court may consider the answer as well," and "the factual allegations in the Answer are taken as true to the extent they . . . do not conflict with the Complaint." *Pro-Concepts, LLC v. Resh*, No. 2:12cv573, 2014 U.S. Dist. LEXIS 18416, at *5 (E.D. Va. Feb. 11, 2014) (citation omitted).

memorandum referring Mr. Wedding to HII's Employee Assistance Program ("EAP") on January 8, 2024 (ECF No. 1, attach. 3 at 18-19, "EAP Referral"), and the termination of employment letter dated February 26, 2024 (ECF No. 1, attach 3 at 17, "Termination Notice").[3]

Mr. Wedding claims that, in February 2023, he was "experiencing anxiety and panic attacks" due to the "rotating shifts" he was working. (Compl. at 5). He requested, and received, an immediate reassignment to first shift. (*Id.*). Following this reassignment, Mr. Wedding alleges that unidentified individuals began engaging in "rumor-spreading, shunning, and theft or molestation" of Mr. Wedding's "personal and company-issued property. (*Id.*). He alleges to have overheard conversations "near his cubicle" that "mocked his medical condition" and included unspecified "disturbing or derogatory content." (*Id.*). Mr. Wedding identifies as an "atheist" and "queer," and claims that he overheard "remarks targeting his sexual orientation and religious beliefs." (*Id.*).

Mr. Wedding does not describe any of the "content" or "remarks" he mentions in his Complaint. Instead, in the attachments to his Complaint, Mr. Wedding claims that unidentified HII employees were "overly loud," made work "harder than it had to be," "were awkward," and "were rude." (ECF No. 1, attach. 3 at 4-10). He also alleges that someone ate his calzone from a shared work fridge, and that during a holiday white elephant gift exchange, he "was last and left with a cheap flashlight from Temu." (ECF No. 1, attach. 3 at 10). Mr. Wedding includes other allegations

---

[3] "Ordinarily, a court may not consider any documents that are outside of the complaint or not expressly incorporated therein, unless the [Rule 12(c)] motion is converted into one for summary judgment." *Witthohn v. Fed. Ins. Co.*, 164 F. App'x 395, 396 (4th Cir. 2006). However, "[t]here are exceptions to this rule[;] . . . [s]pecifically a court may consider official public records, documents central to a plaintiff's claim, and documents sufficiently referred to in the complaint, so long as the authenticity of these documents is not disputed." *Priority Auto Grp., Inc. v. Ford Motor Co.*, No 2:12-cv-492, ECF No. 40, Report and Recommendation at 5 (E.D. Va. Apr. 1, 2013), *adopted and approved*, 2013 U.S. Dist. LEXIS 69216 (E.D. Va. May 15, 2013), *aff'd*, 757 F.3d 137 (4th Cir. 2014).

that appear to have no relationship to any HII employees and did not occur on HII's premises or during work, including being "followed around the graveyard," having his "car broken into," being followed while driving, having "spyware" installed on his "phone/TV/laptop/electronics," and being subjected to "gangstalking" and "police harassment/intimidation." (ECF No. 1, attach. 3 at 4-10). His allegations also include that he was "poison[ed], "giv[en] STDs" and other "diseases, including cancerous cells, giving me AIDS, HIV," and that he was subjected to "blowing up planes and derailing trains." (ECF No. 1, attach. 3 at 9). He claims that an unidentified individual "convince[e] me I had a kid," that his "dog [was] poisoned," and after he avoided a car accident, "a man wearing a grim reaper costume crossed the street in front of me." (ECF No. 1, attach. 3 at 9-10).

On January 8, 2024, Mr. Wedding "reported" to Carrie Allen, a Human Resources representative, his concerns of alleged "discrimination, harassment, and intimidation." (*Id.*). After speaking with Mr. Wedding, Ms. Allen had concerns that Mr. Wedding was displaying "paranoid" behavior, and took him to Newport News Shipbuilding's clinic. (*Id.*). Dr. Apostoles, the head of the Clinic, referred Mr. Wedding for a psychiatric evaluation through the EAP. (*Id.*). Mr. Wedding agreed to "submit to and fully cooperate in whatever treatment program is required by the Employee Assistance Program." (EAP Referral at 1). Mr. Wedding also acknowledged that he would be "discharged immediately" if he "fail[ed] to cooperate fully," and that he "understood the contents and purpose of this memorandum, which sets forth the conditions I must meet to continue my employment with the Company." (*Id.* at 2).

Mr. Wedding alleges, after he was referred for an evaluation, he "contact[ed] numerous psychiatrists," yet he also pleads that, six weeks later, he had not yet even scheduled an appointment for the evaluation. (Compl. at 5). Due to Mr. Wedding's refusal to schedule an

3

appointment for the evaluation with a psychiatrist, NNS terminated Mr. Wedding's employment via a letter dated February 26, 2024. (Termination Notice at 1). Mr. Wedding states that he was told by NNS that his employment was terminated due to his "failure to follow the EAP." (Compl. at 5).

## II.  PROCEDURAL BACKGROUND

This case is still in its early stages, and it has not yet been referred for a scheduling conference. Accordingly, this Motion is timely filed "[a]fter the pleadings are closed but early enough not to delay trial" as required by Rule 12(c). Two other Motions are currently pending before this Court which were filed by Mr. Wedding: a Motion to Transfer Venue and a Motion to Appear Remotely. (ECF Nos. 3 and 4).

**ARGUMENT**

## I.  STANDARD OF REVIEW FOR A RULE 12(C) MOTION

"When deciding a Rule 12(c) motion for judgment on the pleadings, the Court must apply the same standard that is applied when ruling on a motion to dismiss pursuant to Rule 12(b)(6)." *Childress v. City of Richmond*, No. 3:09-cv-48, 2009 U.S. Dist. LEXIS 42013, at \*4 (E.D. Va. May 19, 2009) (quoting *Burbach Broad. Co. v. Elkins Radio Corp.*, 278 F.3d 401, 405-07 (4th Cir. 2002)).  In order to survive HII's Motion for Judgment on the Pleadings, Mr. Wedding's Complaint must state a claim that is not just conceivable, but is also plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

Facial plausibility exists only "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  In assessing a complaint for plausibility, the Court "must take all of the factual allegations in the complaint as true" but need not "accept as true . . .

4

legal conclusion[s] couched as factual allegation[s]." *Id.* (quoting 550 U.S. at 555). The pleading standard "demands more than unadorned, the-defendant-unlawfully-harmed-me accusations. *Iqbal*, 556 U.S. at 678. HII's Motion should be granted if the Court determines that Mr. Wedding "fail[ed] to state any cognizable claim for relief, and the matter can, therefore, be decided as a matter of law." *Thomas v. Standard Fire Ins. Co.*, 414 F. Supp. 2d 567, 570 (E.D. Va. 2006) (citation omitted).

While *pro se* litigants are generally held to a less-stringent standard than attorneys, *Haines v. Kerner,* 404 U.S. 519, 520 (1972), even a *pro se* litigant is required to comply with the Federal Rules of Civil Procedure's pleading requirements. *Alexander v. Delta Star, Inc.*, No. 6:08cv00011, 2008 WL 3887654, at *6-7 (W.D. Va. Aug. 21, 2008) (granting a motion to dismiss a *pro se* litigant's complaint for failure to allege sufficient facts to support the claim). Courts "will not abrogate basic pleading essentials in a *pro se* suit." *Id.* at *2.  If, as here, a plaintiff pleads particular facts "and they show he has no claim, then he is out of luck." *Bender v. Suburban Hosp., Inc.,* 159 F.3d 186, 192 (4th Cir. 1998) (quotation omitted).

## II.    SUMMARY OF THE ARGUMENT

Mr. Wedding's Complaint alleges six counts, four of which are federal claims and two which are state claims. (Compl. at 6-7). The federal claims include discrimination on the basis of his religious beliefs and sexual orientation in violation of Title VII; disability discrimination in violation of the Americans with Disabilities Act ("ADA"); retaliation in violation of both Title VII and the ADA;  and a hostile work environment in violation of Title VII and the ADA. (Compl. at 6-7). Mr. Wedding's state claims are for defamation and intentional infliction of emotional distress ("IIED"). (Compl. at 7). All of these claims fail as a matter of law or due to Mr. Wedding's failure to plead plausibility. This Motion addresses Mr. Wedding's claims by substance rather than count,

addressing first Mr. Wedding's hostile work environment claims, then his retaliation claims and wrongful termination claims, and finally his state claims.

## III.      THE HOSTILE WORK ENVIRONMENT CLAIM (COUNT IV) FAILS

Mr. Wedding claims that he was subjected to a hostile work environment on the basis of his religious beliefs and sexual orientation in violation of Title VII and on the basis of his disability in violation of the ADA. These hostile work environment claims fail because i) they are untimely; ii) Mr. Wedding did not plead he was subjected to severe or pervasive conduct; and iii) he did not plead facts to allege that HII or its employees were the alleged harassers.

### A.       Mr. Wedding's Claims Are Untimely

A charge of discrimination must be filed with the Equal Employment Opportunity Commission within 300 days "from the date of discrimination." *Smith v. Stayer Univ. Corp.*, 79 F. Supp. 3d 591, 598 (E.D. Va. 2015).  If an employee does not submit a timely EEOC Charge, he may not challenge the alleged discrimination in court; even if a discriminatory act did occur, it "is merely an unfortunate event in history which has no present legal consequences." *Ledbetter v. Goodyear Tire & Rubber Co.*, 550 U.S. 618, 626 (2007) (quoting *United Air Lines, Inc. v. Evans*, 431 U.S. 553, 557 (1977)). Mr. Wedding filed his charge with the EEOC on September 30, 2024. (EEOC Charge at 2). As such, conduct that occurred before December 5, 2023 (300 days prior to his EEOC Charge filing) is time-barred.

Although there are no specific allegations in the Complaint itself as to the dates of alleged incidents of harassment, a review of Mr. Wedding's attachments to his Complaint reveals that that there were only three alleged incidents dated after December 5, 2023. The first was "a loud conversation right near [Mr. Wedding's] cubicle about current political events" between two co-workers on December 6, 2023. (ECF No. 1, attach. 3 at 10, describing conversation about "George

Santos ha[ving] a lot of dirt on other Republicans"). The second was a white-elephant gift exchange on December 19, 2023 in which Mr. Wedding felt slighted because he "was last and was left with a cheap flashlight from Temu." (*Id.*). The third was an incident on January 2, 2024 in which Mr. Wedding was nearly in a car accident and then later saw a man in a "grim reaper costume cross[ing] the street in front of me." (*Id.*).

None of these even remotely constitute actionable harassment, and as such, the entirety of Mr. Wedding's hostile work environment claim is untimely. *Woodard v. Lehman*, 717 F.2d 909, 914-15 (4th Cir. 1983) ("It is *only* where an actual violation has occurred within that requisite time period that under any possible circumstances the theory of continuing violation is sustainable.") (italics in original) (footnote omitted).

**B.      Mr. Wedding Failed to Plead Severe or Pervasive Conduct**

Even if Mr. Wedding's hostile work environment claim was timely, it would still fail due to his failure to plead severe or pervasive conduct. In order to plead a plausible hostile work environment claim, Mr. Wedding was required to allege that "the workplace [was] permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of his employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993). Whether allegedly harassing conduct is legally severe or pervasive enough to alter the conditions of employment and create an abusive work environment is assessed in view of the totality of circumstances. *Id.* at 23. The severe or pervasive conduct test is a "high bar." *EEOC v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 315 (4th Cir. 2008).

1.      <u>Facts Pled in the Complaint</u>

Mr. Wedding pleads that on unspecified dates "[c]onversations near his cubicle" between unidentified individuals "mocked his medical condition and included disturbing or derogatory

7

content." (Compl. at 5). However, Mr. Wedding provides no detail about these supposed "conversations" or what the "content" of the conversations was. (*Id.*). He also pleads that unidentified individuals made "remarks targeting his sexual orientation and religious beliefs," (*id.*), but again, does not identify the individuals or describe their remarks.

These unspecific allegations come nowhere close to pleading a plausible claim as they do not include even "modest details that would allow the Court to assess the frequency and severity of allegedly harassing conduct." *Carroll v. Amazon Data Servs., Inc.* No. 1:21-cv-1177, 2022 WL 3161895, at *6 (E.D. Va. Aug. 8, 2022) (granting motion to dismiss hostile work environment claim); *see also, Steele v. Blinken*, No. 1:22-cv-35, 2022 WL 11964563, at *6 (E.D. Va. Oct. 19, 2022) ("Without pleading additional detail as to the specifics of actions by plaintiff's colleagues and/or supervisors, plaintiff fails to push the allegation across the threshold from inappropriate workplace conduct to actionable harassment."), *aff'd*, No. 22-2178, 2024 WL 2815123 (4th Circ. 2024); *Jones v. HCA*, 16 F. Supp. 3d 622, 630-31 (E.D. Va. 2014) (dismissing hostile work environment claim where plaintiff failed to plead any specific allegation that could "shed any light into [the] severity or frequency" of the allegedly harassing conduct and noting that at a minimum, a complaint "must indicate a pattern of extremely abusive language or otherwise pervasive conduct based on the plaintiff's" protected characteristic).

2.      Facts in the "Attachments" to the Complaint

The "attachments" to Mr. Wedding's Complaint provide more detail. However, that detail still falls far short of the standard required to plead severe or pervasive conduct. The vast majority of the conduct detailed in the attachments does not refer to or pertain to any HII employees, which as described below in Section III(C), renders them insufficient to impute liability to HII. For those

allegations that do refer to incidents involving HII employees or occurring in the workplace, they are not sufficiently severe or pervasive. These allegations include, in Mr. Wedding's words:

- "people being overly loud;"
- "boss not approving vacation;"
- "bus pass stolen from desk;"
- work was "making it harder than it had to be it seems;"
- describing supervisors "pressure testing" me;
- claiming someone said in the workplace "I'm going to knock the stupid out of you;"
- describing a "work event at Hooters were [sic] folks were awkward toward me;"
- describing requirement that Mr. Wedding supervise movers for one day instead of his regular job duties;
- "shipyard thugs . . . were rude to everyone;"
- "food taken from fridge. Someone ate my calzone?"
- alleging that co-workers organized a white elephant gift exchange so Mr. Wedding "was last and was left with a cheap flashlight from Temu."

(ECF No. 1, attach. 3 at 4-10). These allegations are "nothing more than rude treatment" and "callous behavior" that is not actionable. *Sunbelt Rentals,* 521 F.3d at 315. In the oft-quoted words of the Supreme Court in *Faragher,* "the sporadic use of abusive language, and [offensive] jokes" are not actionable; neither Title VII nor the ADA is a "general civility code." *Faragher v. City of Boca Raton*, 524 U.S. 775, 778 (1998). It would be a complete 180 degree turn from the entire jurisprudence of Title VII and the ADA if actions such as unapproved vacation, awkward social events, eating another's lunch, and a white elephant gift exchange amounted to actionable harassment.  None of this conduct amounts to severe or pervasive conduct sufficient to plead a plausible hostile work environment claims.

### C.    Mr. Wedding Fails to Plead Facts to Impute Liability

Mr. Wedding describes a number of other bizarre incidents, but they do not involve HII employees at all and occurred off-site and during non-working hours. Neither do these allegations

9

have any connection to Mr. Wedding's alleged disability, sexual orientation, or religious beliefs.

In his own words, Mr. Wedding described these incidents and provided dates of the incidents:

- 4/9/23 – "I was followed around the graveyard and the American Legion chapter leader kept remarking on 'properly retiring' flags"
- 5/5/23 – "Semi-truck collision"
- 5/7/23 – "Car Broken Into. Work Documents stolen from backpack."
- 5/26/23 – "I and two other people I know had recently been rear-ended."
- 6/6/23 – "Psyop about me having a child which my ex didn't tell me about. Other psyops involved false claims about drug residue on my patio . . . and psyops regarding hard drives I had stored in my closet."
- 6/14/23 – "Got tailed the whole way home bc [because] I think they read my texts explaining the situation to my brother."
- 6/17/23 – describing home break-in
- 6/22/23 – claiming to be a "Targeted Individual"
- 6/24/23 – claiming to be "followed"
- 6/27/23 – "Partner's vehicle sabotaged; coolant line disconnected. Email from work mentioned ventilation or cooling work."
- 7/5/23 "Another engineered car crash outside SO's [significant other's] apartment (no airbag, obvious actors). . . . Followed from Virginia to Florida. People onboard the bus, driver fled, U.S. Marshals tags observed. 'Flee country' psyop via Uber."
- 7/11/23 "Followed to Portsmouth."
- 7/27/23 "Weird Hotel California sound clips available during 4 hour test. About not being able to escape a place."
- 9/28/23 – claims he was subject to "coercion techniques" from unidentified individuals including "gangstalking threats of violence, blackmail, bugging home, bugging vehicle, vehicular harassment, vehicular sabotage, shunning, public dissemination of personal info, threats against family/friends, publicizing health information, home invasion, police harassment/intimidation, court harassment, assault, accidents, spyware on phone/TV /laptop electronics, AI personality modeling, psychological operations, perception management, programs, public radio/internet radio data breach/private investigation."
- 9/28/23 – claims he was subject to "specific violent acts threatened/implied" by unidentified individuals including "stabbing, jumping, vehicular assault, shooting point blank, long distance rifle, blowing up planes, derailing trains, poison, giving STDs, planting diseases, introducing cancerous cells, giving me AIDS HIV, atmosphere tampering, indoors O2, CO2, CO introduction . . . bribery, favors, filming private/sexual encounters in my own home/girlfriend apartment, false flags, convince me I had a kid, poisoning, mold, transmitting and [sic] STD via hand."

- 10/4/23 – "dog poisoned"
- 12/6/23 – "I was being watched"
- 1/2/24 – "Car tried to hit me" and "a man wearing a grim reaper costume crossed the street in front of me."

(ECF No. 1, attach. 3 at 4-10).

These are bizarre and incredulous allegations, to say the least. None have any causal connection to Mr. Wedding's protected characteristics, nor are they related to any HII employee or occurred on the worksite or during work hours. For example, the most recent allegation in time to Mr. Wedding's termination involved an unidentified individual "*wearing a grim reaper costume cross[ing] the street in front of*" Mr. Wedding. The allegations span the gambit from *his dog being poisoned* and *receiving "an STD via hand*," to the playing of a "sound clip" from "Hotel California." The Court need not analyze the improbable nature of these allegations because they all share one commonality that is fatal to Mr. Wedding's claim: none of them are attributed to HII or its employees.[4]

### D.    Mr. Wedding Failed to Plead Interference

Besides failing to plausibly plead severe or pervasive conduct, Mr. Wedding also failed to plead that the alleged "harassment unreasonably interfered with [his] work performance." *Jones v. Sun Pharm. Indus., Inc.*, No. 3:19-cv-566, 2020 WL 2501439, at *8 (E.D. Va. May 14, 2020) (Lauck, C.J.) (quotations and citations omitted) (dismissing hostile work environment claim due to failure to plead interference).  In fact, Mr. Wedding pled the opposite and, in reference to events

---

[4] This case is still in its early stages, yet, Mr. Wedding's bizarre allegations have already spilled over into the litigation. Mr. Wedding filed a Motion to Transfer Venue (ECF No. 4) and a Motion to Appear Remotely (ECF No. 5), claiming that he cannot travel to Virginia because he has been "threatened with murder and battery" by an unidentified individual; had a weapon "discharge" in front of his vehicle; he was "followed" at an airport terminal by an individual carrying a "Northrop Grumman" backpack; and **he believes that flying on a commercial, public airline is "unsafe" "due to risks of sabotage."** (*Id.*).

in 2023, he pled that "[d]espite these conditions, [Mr. Wedding] continued meeting performance expectations and passed all qualifications." (Compl. at 5).[5]

## IV.   THE RETALIATION CLAIM (COUNT II) FAILS

Mr. Wedding alleges that he was retaliated against in violation of ADA after he requested an accommodation in February 2023, and later in violation of Title VII and the ADA, after he complained to Ms. Allen in January 2024. (Compl. at 6). His retaliation claim fails because he did not plead facts to plausibly allege a causal connection between the protected activity and adverse action. *EEOC v. Navy Fed. Credit Union*, 424 F.3d 397, 405-06 (4th Cir. 2005) (describing elements of retaliation claim which are that the employee engaged in protected activity, suffered a materially adverse action, and a causal connection exists between the protected activity and materially adverse action).

### A.   Mr. Wedding Fails to Allege Causation

Mr. Wedding fails to allege causation between the protected activity and the adverse action of his termination of employment.[6] Mr. Wedding was placed on paid leave and referred to the EAP

---

[5] As explained in Section V(A), Mr. Wedding's own personal beliefs about his performance in 2023 are immaterial to whether he was meeting expectations from HII's perspective at the time of his termination.

[6] Mr. Wedding's referral to the EAP is not itself a materially adverse action for purposes of his retaliation claim. *Ndzerre v. Wash. Metro. Area Transit Auth.,* 275 F. Supp. 3d 159, 166 (D.D.C. 2017) ("[T]his Court has not found . . . a single case where a Court has held that referral to an EAP constitutes an adverse employment action."); *Delia v. Donahoe,* 862 F.Supp.2d 196, 202 (E.D.N.Y. 2012) (EAP referral is not an adverse action); *Jenkins v. Med. Labs. of E. Iowa, Inc.,* 880 F.Supp.2d 946, 961 (N.D. Iowa 2012) (a requirement to attend EAP counseling does not constitute a "tangible change in working conditions that produces a material employment disadvantage" (citation omitted), *aff'd*, 505 F. App'x 610 (8th Cir. 2013); *Logan v. Henderson,* No. C2–00–0978, 2002 WL 484631, at *6, (S.D. Ohio Feb. 8, 2002) (the fact that plaintiff had to enroll in an EAP to deal with on-the-job stress is not an adverse employment action). This analysis does not change post-*Muldrow* because, even while Mr. Wedding was on leave, he was placed on *paid* leave pending his referral to EAP.

on January 8, 2024. (ECF No. 1, attach. 3 at 18). He was terminated seven (7) weeks later at the end of February, 2024. (ECF No. 1, attach. 3 at 17).  There are no allegations in the Complaint between the referral to EAP and his termination besides the fact that Mr. Wedding was paid during the leave through "short-term disability benefits" coordinated by HII. (Compl. at 5).

The nearly **two-month period** (seven weeks) between Mr. Wedding's report to Ms. Allen in January 2024 and his termination, and the **one year period** between Mr. Wedding's request for an accommodation in February 2023 and his termination, is "sufficiently long so as to weaken significantly the inference of causation between the two events" and, alone it cannot establish causation. *King v. Rumsfeld*, 328 F.3d 145, 151 n.5 (4th Cir. 2003) (explaining that ten-week period between protected activity and adverse employment action was too tenuous alone to support causation);  *EEOC v. Yellow Freight Sys., Inc.,* 253 F.3d 943, 952-53 (7th Cir. 2001) (six week period insufficient to establish retaliation); *Williams v. Fairfield Mem'l Hosp.*, No. 0:19-cv-183, 2020 WL 2573386, at *7 (D.S.C. May 6, 2020) (holding that eight weeks between employee's complaint and her termination, without more, was not sufficient to establish causation), *report and recommendation adopted,* 2020 WL 2572277 (D.S.C. May 21, 2020).

It is appropriate for this Court to consider the plausibility of causation at the motion to dismiss stage as the Fourth Circuit did so as well in *Laurent-Workman v. Wormuth*, 54 F.4th 201, 219 (4th Cir. 2022) (affirming in part lower court's grant of motion to dismiss). In *Laurent-Workman,* the Fourth Circuit determined that a plaintiff "failed to allege a non-speculative link" between her complaint and a denied position two months later, holding that a "two-month temporal gap between . . . the complaint and the adverse action is sufficiently long so as to weaken significantly the inference of causation between the two events." *Id.* (quotations and citations omitted); *see also, Wood v. Bristol Va. Utility Auth.*, 661 F. Supp. 3d 538, 553 (W.D. Va. 2023)

(granting motion to dismiss in part and holding that a "sixty-two day" period was "too long to establish causation by temporal proximity alone"). Mr. Wedding failed to plead facts to allege causation, and his retaliation claim therefore fails.

### B. Mr. Wedding Affirmatively Pled an Intervening Act

Even if the temporal proximity alleged in the Complaint was sufficient, Mr. Wedding himself pled an intervening event that interrupts whatever inferential nexus could be made between the timing of his complaint and his termination. That intervening event is his admitted refusal to schedule and complete an evaluation. Mr. Wedding was warned that he would be "discharged immediately" if he "fail[ed] to cooperate" with the EAP referral. (ECF No. 1, attach. 3 at 19). Mr. Wedding's failure to comply with the referral—which Mr. Wedding himself pleads—severs any casual connection that could arise by reason of temporal proximity. *Horne v. Reznick Fedder & Silverman*, 154 F. App'x 361, 364 (4th Cir. 20050 (noting that when poor performance occurred after a complaint of discrimination the causal connection was broken) (citations omitted).

### V. THE TITLE VII WRONGFUL TERMINATION CLAIM (COUNT III) FAILS

Mr. Wedding alleges that he was wrongfully terminated on the basis of his religious beliefs (atheist) and his sexual orientation (queer) in violation of Title VII. In order to plead a plausible claim, Mr. Wedding's complaint must allege facts sufficient to plead: "(1) that [the plaintiff] is a member of a protected class; (2) that [he] suffered from an adverse employment action; (3) that [he was] performing at a level that met [his] employer's legitimate expectations; and (4) that the position was filled by a similarly qualified applicant outside the protected class." *Guessous v. Fairview Prop. Invs., LLC*, 828 F.3d 208, 219 (4th Cir. 2016) (quoting *King v. Rumsfeld*, 328 F.3d at 149)). When considering the third element of whether the employee plausibly pled he or she had satisfactory job performance, "the employer's performance expectations . . . are the relevant

inquiry" <u>not</u> the employee's "subjective beliefs regarding the adequacy of his job performance." *Luther v. Gutierrez*, 618 F. Supp. 2d 483, 492 (E.D. Va. 2009) (citing *Evans v. Techs. Applications & Serv. Co.*, 90 F.3d 954, 960-61 (4th Cir. 1996) (noting that "[i]t is the perception of the decision maker which is relevant, not the self-assessment of the plaintiff")).

HII does not dispute, for purposes of this Motion, that Mr. Wedding pled the first and second elements[7] of his wrongful termination claim. However, Mr. Wedding failed to plausibly plead the third and fourth elements of the wrongful termination claim: that he met HII's performance expectations at the time of his termination and that his position was filled by a similarly qualified applicant outside of his protected class. He also failed to plead that his religious beliefs and sexual orientation were motivating factors in his termination. Together, these are three independent reasons for why Mr. Wedding's Title VII wrongful termination claim fails.

### A.    Mr. Wedding Failed to Plead Satisfactory Job Performance

Mr. Wedding does not plead that he was performing adequately at the time of his discharge. In fact, **he pled the opposite** by stating that Ms. Allen "told [him] he could not return to work until cleared by . . . a psychiatrist," and that six weeks being referred for an EAP evaluation, he had not complied due to his failure to schedule an appointment. (Compl. at 5)

---

[7] Mr. Wedding's termination of employment is the only adverse action pled for his Title VII claim. The Title VII count includes a reference to "creating unequal conditions of employment" and that Mr. Wedding was "treated . . . less favorably than others." (Compl. at 6). However, nowhere in Mr. Wedding's Complaint are there any factual allegations regarding these supposed adverse actions, including, for example, an identification of the "unequal conditions" or the comparators who were treated more favorably. At most, there is a reference in the "attachments" to an unidentified "gay man" who was "treated better" than Mr. Wedding. (ECF No. 1, attach. 3 at 14). But that certainly is not sufficient given that this unidentified individual *shared* Mr. Wedding's same protected characteristic, and Mr. Wedding provides no information about how this individual was supposedly "treated better."

If an employee pleads facts that demonstrate that, "from the perspective of h[is] employer," his "job performance was not meeting h[is] employer's expectations when []he was terminated," then an employee cannot plausibly plead a wrongful termination claim.[8]  *Strothers v. City of Laurel, Md.*, 118 F. Supp. 3d 852, 853 (D. Md. 2015) (holding that the plaintiff "failed to state a claim because she does not plead that she was satisfying her employer's legitimate expectations at the time of her termination" when, among other facts, the plaintiff pled that she received "an evaluation rating her 'unsatisfactory'"); *see also Bradley v. Gannett Co., Inc.*, No. 1:23-cv-1100, 2025 WL 2533504, at *11 (E.D. Va. Sep. 3, 2025) (granting motion to dismiss based on the failure to "plead that [the plaintiff] was satisfactorily performing her job at the time of her discharge," because the plaintiff pled that "she had been informed that her performance was not up to par and that she was placed on a performance plan"); *Edouard v. John S. Connor, Inc.*, No. 2:22cv263, 2023 WL 3127622, at *4 (E.D. Va. Apr. 27, 2023) (J., Davis) (granting motion to dismiss on wrongful termination claim due to plaintiff's failure to "plead" any "facts" or "allegation[s] that she was meeting [the employer's] legitimate expectations at the time of her termination").

An "admission" that a plaintiff was not performing adequately, as Mr. Wedding has done, is "fatal because it renders any inference of invidious discrimination not plausible in light of the obvious alternative explanation." *Stokes v. AMF Bakery Sys.* No. 3:24-cv-789, 2025 WL 2459089, at *13 (E.D. Va. Aug. 26, 2025) (citation omitted) (granting motion to dismiss). Mr. Wedding

---

[8] Mr. Wedding makes much of a scheduling fee charged by one particular provider, Dr. Grett, as an explanation for why he could not schedule an appointment. (Compl. at 5). However, Mr. Wedding's own notes attached to his Complaint indicate that he could have been seen by any number of other providers who did not charge a scheduling fee. Indeed, Mr. Wedding's notes indicate that he was seen at the Veterans Affairs hospital on January 31, 2024 for a "mental health appointment," yet, Mr. Wedding did not return a completed evaluation. Most importantly, however, regardless of the reason for him not scheduling an appointment, he still failed to do so in the six weeks following his referral. By failing to obtain an evaluation, he did not meet HII's performance expectations.

admitted he was not performing to HII's expectations due to his failure to comply with the EAP referral, and his claim thus fails.

Mr. Wedding only mentions his performance in reference to 2023, a year before his discharge. (*See* Compl. at 5, alleging that sometime in 2023, he "continued to meet performance expectations"). This allegation is immaterial both because: 1) it is from the perspective of Mr. Wedding, not HII; and 2) because it is axiomatic that "[a]cceptable job performance in the past does not establish acceptable job performance at the time of the termination." *Diamond v. Bea Maurer, Inc.*, 128 F. App'x 968, 973 (4th Cir. 2005); *O'Connor v. Consol. Coin Caterers Corp.*, 56 F.3d 542, 547 (4th Cir. 1995), *rev'd on other grounds*, 517 U.S. 308 (1996) (holding that a positive review eight months earlier was not relevant to determining whether the employee was performing satisfactorily at the time of termination). Mr. Wedding's performance a year before his termination "is not sufficient to meet h[is] burden." *Mattamu v. Cnty. of Fairfax*, No. 1:20-cv-1468, 2021 WL 4477300, at *4 (E.D. Va. Sep. 30, 2021) (granting motion to dismiss based on failure to plead adequate performance at the time of discharge).

### B. Mr. Wedding Did Not Plead That He Was Replaced

There is not a single mention of Mr. Wedding's replacement in the Complaint, and this pleading failure is fatal to his Title VII wrongful termination claim. "[I]t is well-settled in the Fourth Circuit that, under ordinary circumstances, a plaintiff must show that the position was filled by somebody outside of the protected class in order to make out a *prima facie* case for discriminatory discharge" under Title VII. *Strothers*, 118 F. Supp. 3d at 863. Mr. Wedding's Complaint fails to include any facts that he was replaced, and this absence is fatal to his claim.

17

### C.    Mr. Wedding Did Not Plead Motivating Factors

In addition to failing to plead he was performing to HII's expectations and that he was replaced, Mr. Wedding failed to plead facts to plausibly allege that his religious beliefs and sexual orientation were motivating factors in his termination, as required to state a claim under Title VII. *See Univ. of Texas Southwestern Med. Ctr. v. Nassar*, 570 U.S. 338, 343 (2013).  Mr. Wedding claims that unidentified individuals ("management, supervisors, and coworkers") harassed him from February 2023 to sometime prior to January 2024, and that the alleged harassment "include[ed] remarks targeting his sexual orientation and religious beliefs." (Compl. at 5). However, there are no facts pled to connect Mr. Wedding's termination to these unidentified harassers and their unidentified remarks. Mr. Wedding pleads that Ms. Allen, a NNS Human Resources representative, terminated his employment by virtue of a written termination notice after Mr. Wedding failed to comply with the EAP.  (Compl. at 5).[9] Notably, Mr. Wedding does not plead that any of the unidentified harassers from the year prior played any role in the decision to terminate his employment.

Based on these allegations pled, there is "no factual basis for the Court to infer that [Mr. Wedding's] primary harassers had any role in the decision to discharge [Mr. Wedding]." *Edouard* 2023 WL 3127622, at *5 (granting motion to dismiss wrongful termination claim because there were no facts pled that the "harasser . . . had any role in the decision to discharge Plaintiff"). Mr. Wedding does not "supply any connection between the[] allegations" of the alleged harassers' remarks targeting his sexual orientation and religious beliefs, and "the termination of his employment." *Ramos v. Molina Healthcare, Inc.*, 603 F. App'x 173, 178 (4th Cir. 2015) (affirming

---

[9] Further, Mr. Wedding does not plead that Ms. Allen had any knowledge of Mr. Wedding's religious beliefs or sexual orientation.

dismissal of discrimination claim). Absent any connection between the individuals who allegedly harbored discriminatory animus and his termination, Mr. Wedding's wrongful termination claim fails.

## VI.    THE ADA WRONGFUL TERMINATION CLAIM (COUNT I) FAILS[10]

In addition to claiming that his termination violated Title VII, Mr. Wedding also claims that his termination violated the ADA. To plead a claim of wrongful termination under the ADA, a plaintiff must plausibly allege that (1) he "was a qualified individual with a disability;" (2) he "was discharged;" (3) he "was fulfilling h[is] employer's legitimate expectations at the time of discharge;" and (4) "the circumstances of h[is] discharge raise a reasonable inference of unlawful discrimination." *Rohan v. Networks Presentations, LLC*, 375 F.3d 266, 273 n.9 (4th Cir. 2004) (internal quotation marks omitted). Mr. Wedding failed to plead the first, third, and fourth elements of his claim.

### A.    Mr. Wedding Failed to Plead a Disability

A "disability" under the ADA can take three different forms:  1) an actual disability; 2) a record of a disability; or 3) being regarded as having a disability. 42 U.S.C. § 12102(1). Mr. Wedding appears to plead that he is disabled both because he has a disability and because HII

---

[10] Count I is Mr. Wedding's cause of action regarding the ADA. (Compl. at 6). There is a mention of "failure to accommodate" under Count I, but Mr. Wedding's only allegations about accommodations are that HII *granted* his accommodation request in February 2023: "Plaintiff requested a reasonable accommodation in the form of a consistent schedule on any shift. This request was approved and Plaintiff was reassigned to an office position writing procedures on first shift in February 2023." (Compl. at 5). As such, HII interprets Mr. Wedding's Complaint as asserting a wrongful termination claim, not a failure to accommodate claim.  To the extent Mr. Wedding did intend to assert a failure to accommodate claim, it would fail given that Mr. Wedding pled that his request was <u>granted</u>. *Ainsworth v. Loudon Cnty. Sch. Bd.*, 851 F. Supp. 2d 963, 981 (E.D. Va. 2012) (granting motion to dismiss failure to accommodate claim when plaintiff did not allege facts showing that "such a request was ever denied").

regarded him as being disabled. Under either definition, Mr. Wedding fails to plead he was a qualified individual with a disability.

### 1.    *Mr. Wedding Failed to Plead He Was Actually Disabled*

Mr. Wedding pleads that he has "diagnosed conditions" of "Generalized Anxiety Disorder, Magor Depressive Disorder, and ADHD." (Compl. at 5). Mr. Wedding alleges that a year before his termination of employment, he was unable to work rotating shifts due to "worsening [of] his symptoms" which were "anxiety and panic attacks," and he requested—and was granted—a change to a "consistent schedule" of "first shift." (*Id.*).

Mr. Wedding's diagnoses alone are not sufficient to plausibly plead he is disabled; rather, he must plead facts to plausibly allege that he suffers from an impairment that "substantially limits one or more major life activities." 42 U.S.C. § 12102(2); *Gentry v. E.W. Partners Club Mgmt. Co.*, 816 F.3d 228, 236 (4th Cir. 2016) (noting the definition of a "disability"); *Fedynich v. Boulder Hous. Partners*, No. 3:20cv165, 2020 U.S. Dist. LEXIS 164368, at *28 (E.D. Va. Sep. 8, 2020) (dismissing plaintiff's claims under the ADA on the grounds that plaintiff failed to allege a disability by "simply referenc[ing] 'mental health needs', 'disabilities', 'mental conditions' and 'health issues' throughout the Complaint"), *aff'd*, No. 20-2082, 2023 U.S. App. Lexis 3073 (4th Cir. Feb. 8, 2023).

Mr. Wedding failed to plead that he was impaired in any major life activity. His alleged impairment of being unable to work a rotating shift schedule—one particular aspect of his job—is not an impairment in the major life activity of working. Indeed, "the inability to perform the requirements of a particular job <u>does not suffice</u>" to establish that "a person is substantially limited in the major life activity of working." *Mumford v. Florence Cnty. Disabilities and Special Needs Bd.,* No. 4:19-cv-1330, 2020 WL 8455077, at *8 (D.S.C. Sept. 29, 2020) (emphasis added)

(collecting cases and discussing the requirements of working as a major life activity even following the amendments to the ADA), *report and recommendation adopted*, 2021 WL 37476 (D.S.C. Jan. 5, 2021). Rather, Mr. Wedding must have pled facts to plausibly allege that he was "substantially limited in performing a class of jobs or broad range of jobs." *Id.*, 2020 WL 8455077, at *8 (citations and quotations omitted). Mr. Wedding failed to do this by pleading only that he was prevented from working a rotating shift schedule for his particular job.

Besides his failure to plead a substantial limitation of a major life activity, Mr. Wedding also failed to plead that he was impaired at the time of his termination. *Anderson v. Discovery Commc'ns, LLC*, 517 F. App'x 190, 196 (4th Cir. 2013) ("In an ADA case, the relevant time for assessing the existence of a disability is the time of the adverse employment action.") (quotations and citations omitted). A plain reading of Mr. Wedding's Complaint reveals that his only pleading of impairment (his inability to work rotating shifts) was in February 2023: a year before his termination. (Compl. at 5). In fact, he specifically pled that he was not suffering any impairment at the time of his termination because his "anxiety and panic attacks" had subsided a year earlier when he was permanently placed on the first shift. (Compl. at 5).

Thus, Mr. Wedding failed to plead that he was impaired in the major life activity of working and that he was impaired at the time of his termination of employment in February 2024.

### 2. *Mr. Wedding Failed to Plead HII Regarded Him As Disabled*

Mr. Wedding alleges that HII "regarded Plaintiff as paranoid, delusional, and having delusions of persecution." (Compl. at 5). Mr. Wedding claims that HII regarded him as disabled because HII referred Mr. Wedding to the EAP and required that he be cleared by a psychiatrist before returning to work. (*Id.*).

21

An EAP referral alone cannot support a regarded-as disabled claim. The EAP referral process was an inquiry into whether Mr. Wedding could perform the job; an inquiry that HII was well within the bounds of the ADA to require. 29 C.F.R. pt. 1630, App'x § 1630.14(c) (employers are "permit[ed] . . . to make inquiries or require medical examination where there is a need to determine whether an employee is still able to perform the essential functions of his or her job").[11] Indeed, requiring Mr. Wedding to submit to an examination "ordered for valid reasons" cannot "prove discrimination." *Pena v. City of Flushing*, 651 F. App'x 415, 422 (6th Cir. 2016); *see also Donley v. Village of Yorkville, N.Y.*, No. 6:14-cv-1324, 2019 WL 3817054, at *5 (N.D.N.Y. Aug. 13, 2019) ("[T]he fact that Plaintiff was ordered to undergo a fitness-for-duty evaluation, specifically to a psychiatric/mental health evaluation, does not support Plaintiff's contention that Defendants regarded him as disabled."); *Stukes v. Locke*, No. 12-cv-381, 2012 WL 5829066, at *3 (D. Md. Nov. 15, 2012) (holding that "[t]he fact that Plaintiff was placed on temporary administrative leave pending a psychological evaluation does not satisfy the perceived disability requirement").

At least two other federal courts have held, at the motion to dismiss stage, that requiring an employee to submit to a psychiatric evaluation is not sufficient to plausibly plead that an

---

[11] Of note, Mr. Wedding's Complaint only alleges indirect evidence of discrimination. Neither HII's referral of Mr. Wedding to the EAP nor his termination of employment for refusing to comply is direct evidence of discrimination because both require an inference of discrimination. *See Jenkins,* 880 F. Supp. 2d at 958-60 (concluding that an employer's referral of an employee to a mandatory EAP did not constitute direct evidence of discrimination because the factfinder would need to make "two major inferences"; that the decision-maker believed the employee "was mentally disabled" in requiring that she go to the EAP and that "this belief motivated [the employer's] decision to terminate [the employee]"; *Dengel v. Waukesha Cnty.*, 16 F. Supp. 3d 983, 997 (E.D. Wis. 2014) (finding no direct evidence where plaintiff was discharged because he "refused to cooperate with the County's expectations" to sign "waivers and undergo the required examinations"). Mr. Wedding's failure to plead an inference of discrimination is discussed in Section VI(B).

employer regarded an employee as disabled.[12]  The Southern District of Ohio granted a Motion to

Dismiss on this very issue. *Morris v. Mary Rutan Hosp.*, No. 2:18-cv-543, 2019 WL 1282284, at

*3 (S.D. Ohio Mar. 19, 2019). In that case, a hospital required a surgeon to submit to a

neuropsychological evaluation after one of his patients suffered an "adverse outcome." *Id. at *1.*

The surgeon sued the hospital claiming that it "perceived [him] to be disabled" when it required

him to undergo an evaluation due to a "belie[f] that [he] had a neuropsychological disorder." *Id.*

After discussing the ADAA, the court determined that these facts were insufficient to plausibly

allege that the hospital regarded the surgeon as disabled because "an employer's request that an

employee undergo a medical or psychological evaluation . . . cannot by itself establish that [the

employer] regarded [the employe] as disabled." *Id. at *3-4.* Similarly, the Western District of

Kentucky granted a motion to dismiss when an employee pled only that his employer required him

to "contact the Defendant's Employee Assistance Plan because the company believed he was

mentally unwell and needed help." *Hopkins v. Bunzl Retail Servs.*, No. 5:22-cv-13, 2022 WL

1693716, at *4 (W.D. Ky. May 26, 2022). Although the Fourth Circuit has not directly addressed

this issue, it has noted that "[o]f the courts of appeals to address" the issue whether a medical

---

[12] On very similar facts, albeit at the first stage of the burden-shifting framework on summary judgment, the District Court of Maryland held on nearly identical facts to the case at hand:

> The evidence is clear that Dr. Sims lost her job because she refused to attend the EAP session, not because the defendants believed she was disabled. Even assuming the defendants believed Dr. Sims had a mental illness, the EAP referral process was in inquiry into whether she could perform the job. Here, the defendants' 'passing reference" to an employee's paranoia is not sufficient to infer that the employee was fired because of a perceived disability.

*Sims v. Univ. of Md. Med. Sys. Corp.*, No. CCB-19-295, 2022 WL 2275891, at *18 (D. Md. June 23, 2022) (quoting *Pence v. Tenneco Auto. Operating Co.,* 169 F. App'x 808, 811 (4th Cir. 2006), *aff'd*, No. 22-1884, 2023 WL 8666002 (4th Cir. Dec. 15, 2023).

evaluation is sufficient to establish a regarded as disabled claim, "all have concluded that it is not." *Coursey v. Univ. of Md. E. Shore*, 577 F. App'x 167, 174-75 (4th Cir. 2014).

To the extent that Mr. Wedding argues that Ms. Allen's and Dr. Apostoles' description of him as "paranoid" is sufficient to plead a plausible regarded-as disabled claim, this "passing reference" is insufficient. *Pence v. Tenneco Auto. Operating Co.*, 169 F. App'x 808, 811 (4th Cir. 2006) ("[N]o rational factfinder could conclude that this passing reference to a belief that [the employee] was paranoid was the reason for his termination . . . ."). HII's "perception that health problems [were] adversely affecting [Mr. Wedding's] job performance is not tantamount to regarding [Mr. Wedding] as disabled. *Pena*, 651 F. App'x at 420 (citations and quotations omitted). Merely being "aware" of Mr. Wedding's symptoms, "without more, is insufficient to demonstrate either that [HII] regarded [Mr. Wedding] as disabled or that perception caused the adverse employment action." *Haulbrook v. Michelin N. Am.*, Inc., 252 F.3d 696, 703 (4th Cir. 2001) (footnote omitted).

At most, this reference to Mr. Wedding as "paranoid" was "descriptive of plaintiff's unusual behavior and statements; they do not show that [Ms. Allen or Dr. Apostoles] regarded him as having a mental impairment. Indeed, the referral to the EAP was to find out the source of his unusual behavior and statements and to provide treatment if necessary." *Hill v. Delta Air Lines, Inc.*, No. 1:18-cv-05589, 2020 WL 12182139, at *18 (N.D. Ga. June 5, 2020); *see also Morgan v. Cnty. Comm'n of Lawrence Cnty.*, No. 5:14-cv-1823, 2016 WL 352537, at *28 (N.D. Ala. June 20, 2016) (comments by two managers that the plaintiff had "mental problems" and was "crazy" reflected that "perception of plaintiff as being paranoid" but did not "pertain[] to any cognitive or intellectual deficiency"), *aff'd*, 687 F. App'x 787 (11th Cir. 2017); *Watson v. City of Miami Beach*,

24

177 F.3d 932 (11th Cir. 1999) (comments that others regarded plaintiff as "paranoid" and "unusual" did not rise to level of an impairment).

Neither HII's referral of Mr. Wedding to the EAP, or reference to him as paranoid, is sufficient to plausibly allege that HII regarded Mr. Wedding as disabled.

### B.      Mr. Wedding Failed to Plead an Inference of Discrimination

In addition to failing to plead that he was a qualified individual with a disability (either because he was disabled or because HII regarded him as disabled), Mr. Wedding also failed to sufficiently allege that his "discharge occurred under circumstances that raise a reasonable inference of unlawful discrimination." *Rohan*, 375 F.3d at 272 n.9; *see Ennis v. Nat'l Ass'n of Bus. and Educ. Radio, Inc.*, 53 F.3d 55, 58-59 (4th Cir. 1995).  Here, the only inference Mr. Wedding pleads between his alleged disability and termination is the fact that he was referred to an EAP.

However, referral to an EAP is not enough to plead an inference of discrimination.[13] *See Delia v. Donahoe*, 862 F. Supp. 2d at 219 (holding that referral to an EAP, among other actions, was not sufficient to "permit[] an inference of discrimination"). It is logical that a medical examination would be insufficient to plead an inference because employers are permitted to "require a medical examination (and/or inquiry) of an employee that is job-related and consistent with business necessity."  29 C.F.R. § 1630.14(c). If referral for an evaluation to EAP was always sufficient to plead an inference of discrimination, employers would be limited in seeking an examination in the first place. Indeed, every referral would subject an employer to an inference of

---

[13] If Mr. Wedding's argument is that Ms. Allen's and Dr. Apostoles' reference to paranoia is sufficient to raise an inference of paranoia, it does not. *Pence*, 169 F. App'x at 811 ("[N]o rational factfinder could conclude that this passing reference to a belief that [the employee] was paranoid was the reason for his termination . . . .").

discrimination, and this cannot be the case given that the ADA allows employers to require medical examinations.

### C.    Mr. Wedding Failed to Plead Causation

Besides failing to plead an inference of discrimination, Mr. Wedding also failed to plead causation, i.e. a link, between his supposed disability and his termination of employment. For an ADA wrongful termination claim, causation requires that the plaintiff plead that that the "disability was the 'but-for' cause of an adverse employment decision." *Davis v. W. Carolina Univ.*, 695 F. App'x 686, 688 (4th Cir. 2017). The ADA's "but-for" causation standard precludes "mixed motive" causation: "If an employer acts with a mixed motive—both a discriminatory and non-discriminatory reason—then the employer is not liable. In other words, causation requires disability to be more than *a* motivating factor: it must be *the only* motivating factor." *Id.* (citations omitted) (emphasis in original).

Mr. Wedding admits in his Complaint that his termination was motivated, at least in part, by his failure to comply with the EAP referral,[14] which is certainly a non-discriminatory reason for his termination. As such, he pled himself out of the ADA's causation standard by pleading that HII acted with a mixed motive.[15] Mr. Wedding himself "attributed his termination to several motives, at least some of which were non-discriminatory." *Alford v. Dep't. of Commerce*, No. 7:25-cv-418, 2026 WL 957667, at *5 (E.D.N.C. Mar. 10, 2026) (granting motion to dismiss when plaintiff alleged that one of the "grounds for his termination" was for lying on a mileage

---

[14] Mr. Wedding does not allege that his inability to comply with the EAP referral was due to his diagnoses.

[15] The ADA's causation standard is arguably designed to prevent the illogical conclusion Mr. Wedding alleges. Mr. Wedding pled that HII terminated Mr. Wedding weeks after referring him to EAP. If HII truly regarded Mr. Wedding as disabled, then arguably HII would have terminated him outright, rather than placing him on paid leave and referring him to EAP.

reimbursement, among other reasons), *report and recommendation adopted*, 2026 WL 950801 (E.D. NC. 2026); *Thornock v. JES Foundation Repair*, No. 7:23-cv-638, 2024 WL 1739755, at *8 (W.D. Va. Apr. 23, 2024) (granting motion to dismiss when the plaintiff alleged no facts that his "suicidal ideations and poor mental health" caused his termination); *Gray v. Columbia Gas of Va., Inc.*, No. 2:18-cv-475, 2019 WL 13295820, at *4  (E.D. Va. Jan. 14, 2019) (granting motion to dismiss disability discrimination claim because the "causal relationship between" the plaintiff's disability "and his discharge is broken by his failure to pass the 2015 test," which was a non-discriminatory motive for the termination). Mr. Wedding's Complaint pleads a mixed motive, which is fatal to his ADA claim for wrongful termination.

### D. Mr. Wedding Failed to Plead He Was Meeting HII's Expectations

Mr. Wedding also failed to plead facts sufficient to allege that he was "performing h[is] job at a level that met [HII's] legitimate expectations." *Jacobs v. N.C. Admin. Off. of the Cts.*, 780 F.3d 562, 572 (4th Cir. 2015). This, as with a Title VII claim, is a required element of his ADA claim. Because this argument overlaps with that of Title VII discussed previously, HII incorporates by reference as if fully restated herein the arguments in Section V(A), which apply in the same manner to Mr. Wedding's ADA wrongful termination claim.

## VII. THE STATE CLAIMS (COUNT V AND VII) FAIL

In addition to Mr. Wedding's federal claims, his Complaint also includes two state law claims: defamation and IIED. Should the Court dismiss the federal claims, it has adequate grounds to dismiss the supplemental state law claims alone for lack of subject matter jurisdiction. *Couch v. City of Va. Beach*, 768 F. Supp. 3d 741, 755 (E.D. Va. 2025). To the extent the Court reaches the merits of either of these claims, they fail.

### A.    The Defamation Claim is Untimely and Fails to Plead Exact Words

The elements of defamation are "(1) publication of (2) an actionable statement with (3) the requisite intent." *Tharpe v. Saunders*, 285 Va. 476, 476 (2013) (citations omitted). Mr. Wedding's claim is time-barred, and he failed to plead the exact words used. Virginia's statute of limitations as applied to defamation and libel is one year.  Va. Code § 8.01-247.1. The alleged defamatory statements were made at the time Mr. Wedding was placed on leave and referred to EAP, in January 2024. Given that Mr. Wedding did not file suit until October 29, 2025, his claim is far outside the statute of limitations.

Additionally, Mr. Wedding failed to plead the exact words of the statement alleged to be defamatory or libelous. *See Fed. Land Bank v. Birchfield*, 173 Va. 200, 215 (1939) ("Good pleading requires that the exact words spoken or written must be set out in the declaration *in haec verba*.  Indeed the pleading must go further, that is, it must purport to give the exact words. . . . Words equivalent or of similar import are not sufficient."). This pleading standard has been adopted by federal courts to require plaintiffs to plead the exact words *in haec verba*.  *See, e.g.*, *Goulmamine v. CVS Pharm., Inc.*, 138 F. Supp. 3d 652, 670 (E.D. Va. 2015) (citing *McGuire v. IBM Corp.,* No. 1:11CV528, 2011 U.S. Dist. LEXIS 100893, at *5 (E.D. Va. Sep. 8, 2011) ("The

pleading standard for a defamation claim under Virginia law 'requires that the exact words spoken or written must be set out in the declaration in haec verba'").[16]

Mr. Wedding only pleads that HII made "false statements about Plaintiff's mental fitness . . . representing that Plaintiff was paranoid or delusional." (Compl. at 7). Mr. Wedding does not plead the exact statements made, neither does he plead *who* made the statements, *when* or *where* the statements were made. Instead, he refers to "Defendant and its agents" without any specification. (*Id.*). Because the defamation claim is untimely and Mr. Wedding failed to plead the exact words spoken or relayed, Count V fails as a matter of law.

## B.    The IIED Claim Fails

To state a plausible IIED claim, a complaint must allege: (1) intentional or reckless conduct; (2) the conduct was outrageous or intolerable; (3) there was a causal connection between the wrongful conduct and the resulting emotional distress; and (4) the resulting emotional distress was severe. *Ogunde v. Prison Health Servs., Inc.*, 274 Va. 55, 65 (2007). To satisfy the standards to maintain a claim for IIED, the alleged conduct must be so intolerable and outrageous that it "offends against the generally accepted standards of decency and morality." *Jordan v. Shands*, 255 Va. 492, 498 (1998). A court is not required to accept conclusory allegations in its review of an intentional infliction of emotional distress claim. *Ogunde*, 274 Va. at 66.

---

[16] In an unpublished table decision, the Fourth Circuit held that a district court's reliance on the *Birchfield* pleading standard was erroneous. *Wuchenich v. Shenandoah Mem'l Hosp.*, No. 99-1273, 2000 U.S. App. LEXIS 11557, at *45-46 (4th Cir. May 22, 2000). Notwithstanding, courts within the Fourth Circuit, including our own Eastern District of Virginia, have continued to rely on *Birchfield's* "exact words" standard. *See, e.g.*, *Syed v. Mohammad*, No. 1:15-cv-01332, 2016 U.S. Dist. LEXIS 45611, at *5 (E.D. Va. Apr. 1, 2016) (J. Hilton); *Elamon v. Red Robin Int'l, Inc.*, No. 2:06cv202, 2006 U.S. Dist. LEXIS 61470, at *10 (E.D. Va. Aug. 17, 2006) (J. Tommy Miller); *Broadnax v. Dep't of Vet. Affairs Wash. Mut. Bank,* No. 2:04cv693, 2005 U.S. Dist. LEXIS 9549, at *24 (E.D. Va. May 19, 2005) (J. Jackson). *But see Santos v. Christian*, No. 3:15cv476, 2015 U.S. Dist. LEXIS 160428, at *12 n.10 (E.D. Va. Nov. 30, 2015) (J. Lauck).

Here, the conduct Mr. Wedding alleges supports his IIED claim is the same as that which supports his claim for a hostile work environment. However, as discussed above, the conduct alleged by Mr. Wedding is not even severe or pervasive enough to support his claim for harassment. It therefore certainly does not rise to the level of outrageous and intolerable conduct required to maintain a claim for intentional infliction of emotional distress.

## CONCLUSION

HII requests that the Court enter judgment in HII's favor on the entirety of Mr. Wedding's Complaint.

Dated:  April 17, 2026                          Respectfully submitted,

                                                By:    */s/ Sharon Kerk Reyes*
                                                Sharon Kerk Reyes (VSB No. 87701)
                                                KAUFMAN & CANOLES, P.C.
                                                150 West Main Street, Suite 2100
                                                Norfolk, VA 23510
                                                T:  (757) 624-3000
                                                F:  (888) 360-9092
                                                skreyes@kaufcan.com

                                                *Counsel for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on this 17th day of April, 2026, I will electronically file the foregoing document with the Clerk of the Court using the CM/ECF system, and I hereby certify that I will mail the document by First-Class mail, postage prepaid, with a courtesy copy via electronic mail, to the following non-filing user:

Kitron A. Wedding, *pro se*
1001 Gayley Avenue Unit # 24724
Los Angeles, CA 90024
samphone2025@proton.me
*Pro Se Plaintiff*


By:    */s/ Sharon Kerk Reyes*
Sharon Kerk Reyes (VSB No. 87701)
KAUFMAN & CANOLES, P.C.
150 West Main Street, Suite 2100
Norfolk, VA 23510
T:  (757) 624-3000
F:  (888) 360-9092
skreyes@kaufcan.com

*Counsel for Defendant*