## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Newport News Division

KITRON A. WEDDING, pro se,

     Plaintiff,

v.                           Civil Action No. 4:25-cv-143-RBS-LRL

HUNTINGTON INGALLS INCORPORATED,

     Defendant.

---

### PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS

**PRELIMINARY STATEMENT**

Defendant Huntington Ingalls Incorporated ("HII") moves under Rule 12(c) to dismiss all six counts of Plaintiff's Complaint before any discovery has taken place. HII's motion rests on two strategies: first, mischaracterizing Plaintiff's Complaint to excise its strongest allegations; and second, relying on material from Plaintiff's personal journal notes attached to the Complaint, material that HII then wields to create an impression of implausibility that obscures straightforward, well-pleaded claims of disability discrimination and retaliation.

At its core, Plaintiff's case is simple. He disclosed a mental health disability, requested accommodation, received it, and was then subjected to escalating retaliation culminating in a forced psychiatric evaluation administered through a contractor who had already regarded him as

"delusional," who offered to schedule the required appointment on Plaintiff's behalf and failed to do so, and who then reported Plaintiff noncompliant, a report that triggered immediate termination. These facts, accepted as true under the applicable standard, state plausible claims under the ADA and Title VII. The motion should be denied.

**STANDARD OF REVIEW**

A Rule 12(c) motion is governed by the same standard as a Rule 12(b)(6) motion. Burbach Broad. Co. v. Elkins Radio Corp., 278 F.3d 401, 405-06 (4th Cir. 2002). The Court must "take all of the factual allegations in the complaint as true" and draw all reasonable inferences in Plaintiff's favor. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Judgment on the pleadings is appropriate only if the complaint fails to state a claim that is plausible on its face. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).

Critically, pro se complaints are held to "less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520 (1972). Courts must construe them liberally and look to the substance of the allegations rather than technical pleading deficiencies. Gordon v. Leeke, 574 F.2d 1147 (4th Cir. 1978). This liberal construction applies with full force here.

**ARGUMENT**

**I. PLAINTIFF'S ADA CLAIMS (COUNT I) ARE WELL-PLEADED AND SURVIVE RULE 12(c).**

A. Plaintiff Adequately Pleads He Was "Regarded As" Having a Disability.

HII argues that neither the EAP referral nor being called "paranoid" suffices to plead a "regarded as" disability under the ADA. But HII ignores the totality of what Plaintiff alleged.

Under the ADA Amendments Act of 2008 ("ADAAA"), the "regarded as" prong was intentionally broadened. An employer regards an employee as disabled when it takes a prohibited action "because of an actual or perceived physical or mental impairment." 42 U.S.C. § 12102(3) (A). Importantly, the ADAAA's legislative history makes clear that Congress intended to overrule prior restrictive judicial interpretations and lower the threshold for "regarded as" claims. See Summers v. Altarum Inst., Corp., 740 F.3d 325, 329 (4th Cir. 2014).

Here, Plaintiff does not merely plead that HII made a "passing reference" to paranoia. He pleads that: (1) HII's company-retained EAP contractor, Ron Grett, explicitly told Plaintiff on January 23, 2024 that he was experiencing "delusions of persecution" and that Dr. Apostoles, the company's own medical director, regarded Plaintiff as "delusional"; (2) Dr. Apostoles, after personally evaluating Plaintiff, immediately referred him for psychiatric clearance before he could return to work; (3) HII placed Plaintiff on paid medical leave and coordinated short-term disability benefits through Prudential, with Prudential's approval based on HII's representation that Plaintiff was mentally unfit for work; and (4) HII required psychiatric clearance from a specific provider of its own choosing as a condition of continued employment. (Compl. at 5, Exhibits E, F, G.)

Taken together, these allegations go far beyond a single stray comment. They show HII treated Plaintiff as though he suffered from a serious mental impairment, paranoid delusional disorder, that rendered him unfit to work. That is precisely the "regarded as" scenario the ADAAA was designed to cover. The cases HII cites involving isolated comments or routine fitness-for-duty referrals are distinguishable because none involved an employer's contractor relaying and

endorsing the medical director's regarding of the employee as delusional, an employer-directed disability leave supported by insurance disability payments, and an employer-mandated psychiatric clearance process. Taken as true and construed liberally, Plaintiff's allegations plausibly establish that HII regarded him as disabled.

B. Plaintiff Adequately Pleads He Was Qualified and Meeting Legitimate Expectations Prior to the EAP.

HII argues Plaintiff admitted he was not meeting its expectations at the time of termination because he did not complete the EAP. This argument conflates two distinct questions: whether Plaintiff was performing his job functions satisfactorily, and whether Plaintiff complied with an administratively imposed medical clearance requirement.

The Complaint alleges that Plaintiff "continued to meet performance expectations and passed all qualifications, including Radiological Training for Nuclear Engineers (RTNE, a voluntary professional development qualification)." (Compl. at 5.) This is a direct allegation of satisfactory performance. The fact that this satisfactory performance predates his termination by approximately one year does not defeat the claim at the pleading stage; it is, at minimum, evidence the Court must accept as true.

More importantly, whether compliance with the EAP, a process Plaintiff alleges was itself retaliatory and pretextual, constitutes a "legitimate" performance expectation is a question of fact and law that cannot be resolved on a Rule 12(c) motion. If the EAP itself was unlawfully imposed as a retaliatory mechanism, as Plaintiff alleges, then "failing" to comply with it cannot

be characterized as a failure to meet legitimate expectations. To hold otherwise would allow an employer to insulate any retaliatory use of a medical clearance process from ADA liability simply by framing termination as "EAP noncompliance." That is not the law.

C. Plaintiff Pleads Facts Raising a Reasonable Inference of Unlawful Discrimination.

The sequence of events alleged in the Complaint raises a compelling inference of discrimination. Immediately following Plaintiff reporting workplace discrimination and harassment to Human Resources (HR) representative Carrie Allen, on January 8, 2024, he was: regarded as sounding paranoid by the representative, escorted from the building by security; taken to the company's medical director; labeled as displaying "paranoid" behavior by the director; required to sign an EAP agreement; and told he could not return to work until cleared by a psychiatrist, later specified to be of Ron Grett's choosing. This sequence, complaint immediately followed by removal and forced psychiatric evaluation, is itself circumstantial evidence of discriminatory motive.

Additionally, Plaintiff alleges that when he attempted to comply with the EAP, the contractor (Grett) refused to allow Plaintiff's own Veteran's Affairs mental health providers to perform the evaluation alone, insisted on a specific private psychiatrist (Dr. Cunningham), offered to schedule the appointment himself and failed to do so after Plaintiff approved, and then reported Plaintiff noncompliant, triggering immediate termination. These allegations, accepted as true, suggest HII was not genuinely seeking compliance but was constructing a pretext for termination.

**II. PLAINTIFF'S RETALIATION CLAIMS (COUNT II) ARE WELL-PLEADED.**

A. Plaintiff Pleads Protected Activity.

Plaintiff engaged in at minimum two distinct instances of protected activity: (1) his February 2023 request for a reasonable accommodation for his anxiety and panic attacks, which is expressly protected under the ADA, 42 U.S.C. § 12203; and (2) his January 8, 2024 report to HR of workplace discrimination, harassment, and intimidation, which is expressly protected under Title VII and the ADA. (Compl. at 5-6.)

HII argues Plaintiff "failed to allege causation" because of the temporal gap between the February 2023 accommodation and his termination. But this ignores that the January 2024 HR complaint (the second protected activity) was followed within hours by the EAP referral and removal from the workplace, and within weeks by termination. A protected activity and adverse action occurring in the same calendar day is among the strongest possible temporal proximity evidence. See Clark Cnty. Sch. Dist. v. Breeden, 532 U.S. 268, 273-74 (2001) (noting that "very close" temporal proximity can alone establish causation).

B. The EAP Referral, Removal, and Termination Are All Adverse Actions.

HII contends that the EAP referral was not itself an "adverse action." Even accepting that argument for purposes of this motion, Plaintiff does not rely on the EAP referral alone. The adverse actions Plaintiff alleges include: (1) physical removal from his workplace by a security escort; (2) forced placement on medical leave; (3) loss of access to his workplace and systems; and (4) termination of employment. These are unquestionably "materially adverse" actions under Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53 (2006).

C. Plaintiff Pleads a Non-Speculative Causal Link.

HII argues the temporal gap between the February 2023 accommodation request and the February 2024 termination is too long to establish causation. But this argument again ignores the January 2024 protected activity. When a plaintiff engages in multiple protected activities at different times, the relevant temporal proximity analysis focuses on the most recent protected activity. Here, the January 8, 2024 HR complaint preceded EAP referral and workplace removal by a matter of hours, and the February 26, 2024 termination letter by approximately seven weeks. Under Fourth Circuit precedent, a seven-week gap is sufficiently close to support an inference of causation, particularly when, as here, there is no gap at all between the complaint and the retaliatory acts that immediately followed. See Williams v. Cerberonics, Inc., 871 F.2d 452, 457 (4th Cir. 1989).

Moreover, causation is not established by temporal proximity alone. Plaintiff also alleges that: (a) the EAP process was administered by a contractor who regarded Plaintiff as "delusional" and unfit; (b) that contractor offered to schedule the required appointment and failed to do so; and (c) the contractor then reported Plaintiff noncompliant. These facts, accepted as true, paint a picture not of legitimate business processes but of manufactured grounds for termination which is direct evidence of retaliatory intent, not mere temporal inference.

### III. PLAINTIFF'S TITLE VII WRONGFUL TERMINATION CLAIM (COUNT III) STATES A CLAIM.

HII argues Plaintiff failed to plead: (1) satisfactory job performance; (2) that he was replaced by someone outside his protected class; and (3) that his religious beliefs or sexual orientation motivated the termination.

As to performance, the argument is addressed above. As to replacement, Plaintiff does not allege

he was replaced, and he need not. The Fourth Circuit recognizes that a plaintiff may satisfy the fourth prong of the prima facie case through "other circumstances giving rise to a reasonable inference of unlawful discrimination," not exclusively by pleading replacement. See Miles v. Dell, Inc., 429 F.3d 480, 486-87 (4th Cir. 2005). At the pleading stage, Plaintiff need not prove every element of the prima facie case; he need only plead facts plausibly suggesting discrimination. Swierkiewicz v. Sorema N.A., 534 U.S. 506, 511 (2002).

As to motivating factors, Plaintiff alleges that after he disclosed his atheism and queer identity to coworkers and supervisors, he was subjected to hostile remarks targeting those characteristics, and that the hostile work environment that followed his disclosures eventually contributed to his removal from the workplace. (Compl. at 5-6.) While the decision-maker (Carrie Allen) may not have known about his specific identities, the hostile work environment created by coworkers and supervisors who did know, whose conduct HII allowed, provides the discriminatory animus context that connects to the termination. At the pleading stage, Plaintiff is not required to identify the precise mechanism by which discriminatory animus influenced the decision; that is a matter for discovery. The Complaint's allegation that supervisors and coworkers who knew of Plaintiff's protected characteristics participated in the hostile treatment preceding his removal is sufficient at this stage.

## IV. PLAINTIFF'S HOSTILE WORK ENVIRONMENT CLAIM (COUNT IV) IS TIMELY AND ADEQUATELY PLEADED.

A. The Continuing Violation Doctrine Preserves Pre-December 2023 Acts.

HII argues that all pre-December 5, 2023 acts are time-barred and that the only post-cutoff acts are too minor to sustain the claim. But HII's analysis ignores the continuing violation doctrine.

Under National R.R. Passenger Corp. v. Morgan, 536 U.S. 101 (2002), a hostile work environment claim may include acts occurring before the limitations period if those acts are part of the same unlawful employment practice as a timely-filed act. The doctrine requires only that at least one act constituting the harassment occur within the charge-filing period.

Here, the January 8, 2024 events, the security escort, the forced psychiatric evaluation, the labeling of Plaintiff as paranoid and delusional, and the EAP coercion are all squarely within the 300-day period preceding Plaintiff's September 30, 2024 EEOC charge. These events are not isolated; they are the culmination of a pattern of harassment that began in February 2023 following Plaintiff's accommodation request. Under Morgan, the Court may consider the entire course of conduct as a single unlawful employment practice.

B. The Conduct Alleged Is Sufficiently Severe.

HII characterizes the conduct as mere rudeness. But HII again preferentially picks the least severe allegations from Plaintiff's notes while ignoring the most serious pleaded facts: being physically escorted from the workplace by security and in view of colleagues immediately after making a discrimination complaint; being taken before a company doctor who regarded him paranoid; being coerced into signing a document under threat of immediate discharge; removed from work as someone the company treated as unfit to be present; and ultimately losing his livelihood through a process administered by a contractor who had regarded Plaintiff as delusional. These facts, accepted as true, describe conduct severe enough to alter the terms and conditions of employment.

Whether the personal journal entries also attached to the Complaint describe additional off-

premises incidents is immaterial to the hostile work environment claim. The workplace-based conduct is independently pleaded in the body of the Complaint and is sufficient to state a claim. Plaintiff can provide additional factual detail if the Court finds any claim insufficiently pleaded.

**V. THE STATE LAW CLAIMS SHOULD SURVIVE.**

A. The Defamation Claim (Count V).

HII argues the defamation claim is time-barred and insufficiently pleaded under Virginia's in haec verba requirement. As to timeliness, the allegedly defamatory statements were published in January and February 2024. As to the statements communicated to Prudential Insurance, Plaintiff was not a party to those communications and has not been provided their specific content; the documents in Plaintiff's possession reflect only that disability benefits were administered, not the substance of what Defendant represented about Plaintiff's mental condition. Because the content of any such statements could not reasonably have been discovered by Plaintiff outside of discovery, Virginia's discovery rule may toll the limitations period as to those communications, presenting a factual question inappropriate for resolution on the pleadings. To the extent the Court finds the defamation count insufficiently pleaded as to timeliness or specificity, Plaintiff respectfully requests leave to amend.

As to the pleading standard, Plaintiff acknowledges that Virginia courts traditionally require pleading the defamatory words in haec verba. At minimum, Plaintiff requests leave to amend the defamation count to add the specific language communicated to Prudential and to Grett if the Court determines in haec verba pleading is required.

B. The IIED Claim (Count VI).

The IIED claim is pleaded in the alternative. If the Court finds the federal claims survive, as Plaintiff submits it should, the Court has supplemental jurisdiction over the state claims. If the federal claims survive, the IIED claim should as well, as it is based on the same extreme conduct: the coercive use of a psychiatric evaluation process as a mechanism to remove and terminate a protected employee, administered by a contractor.

## VI. PLAINTIFF'S COMPLAINT SHOULD BE CONSTRUED LIBERALLY AND LEAVE TO AMEND SHOULD BE GRANTED IF NECESSARY.

Even if the Court finds any count insufficiently pleaded, dismissal with prejudice is not appropriate. Pro se plaintiffs must be given an opportunity to amend deficient pleadings unless amendment would be futile. See Goode v. Cent. Va. Legal Aid Soc'y, Inc., 807 F.3d 619 (4th Cir. 2015). Here, amendment would not be futile. Plaintiff has extensive documentary evidence, including email threads, call records, the EAP agreement, the termination letter, and communications with Dr. Cunningham's office, that can cure any pleading deficiencies. At minimum, if the Court is inclined to grant any portion of HII's motion, it should do so without prejudice and grant Plaintiff leave to file an Amended Complaint.

The Court should also note that the personal journal entries HII has quoted at length in its Memorandum are not the operative factual basis for Plaintiff's legal claims. They were attached as part of a broader timeline document incorporated by reference into the Complaint. The core legal claims (accommodation request, retaliation, hostile work environment, and the EAP-based termination) are fully and specifically pleaded in the body of the Complaint itself and are supported by exhibits showing Plaintiff's good-faith compliance efforts. The Court need not resolve questions about off-premises incidents attributed to unidentified third parties in order to

find that Plaintiff's workplace discrimination claims are plausible.

**CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendant's Motion for Judgment on the Pleadings in its entirety. In the alternative, if the Court grants any portion of the motion, Plaintiff requests that dismissal be without prejudice and that he be granted leave to file an Amended Complaint within thirty (30) days.

Respectfully submitted,

Date: June 5th, 2026



_____

Kitron A. Wedding, Plaintiff Pro Se

1001 Gayley Ave Unit #24724

Los Angeles, CA 90024

(336) 447-0584        samphone2025@proton.me

**CERTIFICATE OF SERVICE** I hereby certify that on June 5, 2026, I caused a true and correct copy of the foregoing to be served upon Defendant's counsel of record by first-class mail, postage prepaid, and by electronic mail, addressed as follows:

Sharon Kerk Reyes Kaufman & Canoles, P.C. 150 West Main Street, Suite 2100 Norfolk, VA 23510 skreyes@kaufcan.com

_____

Kitron A. Wedding, Plaintiff Pro Se