**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Newport News Division**

**KITRON A. WEDDING, *pro se,***
**Plaintiff,**

**v.**

**Civil Action No. 4:25-cv-143-RBS-LRL**

**HUNTINGTON INGALLS INCORPORATED,**
**Defendant.**

**<u>DEFENDANT'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS</u>**

Defendant Huntington Ingalls Incorporated ("HII"), by counsel, for its Memorandum in Support of its Motion to Dismiss, states as follows.

## INTRODUCTION

*Pro se* Plaintiff Kitron Wedding's ("Plaintiff") Amended Complaint is nothing more than a veneer of organization and paragraph formatting covering his original deficient allegations. Plaintiff only made four substantive changes. First, Plaintiff took some allegations contained in the prior complaint's attachments and copied them into the Amended Complaint; these allegations range from the <u>benign</u> (a coworker playing a practical joke, being last at a White Elephant Gift exchange, and being denied vacation leave) to the <u>bizarre</u> (a near-miss car accident, surveillance, and being followed in public). Second, he added a new section entitled "post-employment conduct" where he alleges that, years past his termination and while living in California, he has been subjected to stalking, threats of gun violence, monitoring, and cyber-stalking by unidentified individuals. Third, he added additional actions he believes qualify as adverse actions for his discrimination claims and materially adverse actions for his retaliation claim. Fourth, he added more specificity to the words he claims are defamatory. Rather than rule on HII's original dispositive motion, this Court granted Plaintiff leave to amend; his amendment has proven futile

and no further amendments are appropriate. Plaintiff simply cannot plead plausible claims.

## FACTS ALLEGED IN THE AMENDED COMPLAINT

The facts outlined herein are derived from the Amended Complaint[1] (ECF No. 19, "Am. Compl."), and the attachments to the original complaint, (ECF No. 1, attachs. 1-8, hereinafter "Attachments"), which Plaintiff continues to rely on and expressly incorporated into the Amended Complaint. (Am. Compl. at 2, ¶ 3).[2] Plaintiff claims that, in February 2023, while working as a Shift Test Engineer, he was "experiencing anxiety and panic attacks related to his job duties, particularly the rotating shift schedule." (*Id.* at 5, ¶ 20). He requested, and received, a reassignment to first shift. (*Id.* at ¶ 21). Plaintiff says that in July 2023, he "requested to work from home as an additional accommodation," but he does not plead whether this request was granted or denied. (*Id.* at ¶ 22). After Plaintiff was reassigned to first shift, Plaintiff alleges that "managers, supervisors, and coworkers" began engaging in "harassment, intimidation, rumor-spreading, shunning, and other conduct designed to pressure Plaintiff to abandon his accommodation." (*Id.* at ¶ 23). He alleges that this conduct has "continue[d] into the present and now seems more directed at pressuring the plaintiff into abandoning this case or obstructing his ability to bring the case safely." (*Id.*). Plaintiff identifies as an "atheist" and "queer," and claims that he overheard "hostile remarks targeting his sexual orientation and religious beliefs." (*Id.* at 9, ¶ 39).

Most of Plaintiff's specific allegations are benign; they are the sort of workplace treatment that is not actionable, including being "exclude[ed] from workplace interactions," a co-worker playing a joke on Plaintiff, denied vacation leave, and being last in a White Elephant Gift exchange

---

[1] The facts in the Amended Complaint are assumed as true for purposes of this Motion only.

[2] The Court may rely on the attachments as Plaintiff "expressly incorporated" them into the Amended Complaint. *Witthohn v. Fed. Ins. Co.*, 164 F. App'x 395, 396 (4th Cir. 2006).

and only receiving a "cheap flashlight." (Am. Compl. at 6-9).

However, the allegations are not limited to the benign and also include the bizarre. These allegations have no relationship to any HII employees, did not occur on HII's premises, and did not happen during work. Plaintiff claims to have been subjected to a near-miss car accident, (*Id.* at 8, ¶ 38), "surveillance," (*Id.* at 5, ¶ 23), "being followed in public, including on his commute," (*Id.* at 6, ¶ 27), monitoring of "his travel plans, information from his internet search history, texts, emails, and other personal communications," (*Id.* at 7, ¶ 31) monitoring of "his pet dog," (*Id.*), and "stalking, threats of gun violence, monitoring, or cyberstalking," (*Id.* at 15, ¶ 67).

In the Attachments, Plaintiff alleged that he was "followed around the graveyard," had his "car broken into," was followed while driving, had "spyware" installed on his "phone/TV/laptop/electronics," and was subjected to "gangstalking" and "police harassment/intimidation." (ECF No. 1-3 at 4-10). His allegations also include that he was "poison[ed]," "giv[en] STDs" and other "diseases, including cancerous cells, giving me AIDS, HIV," and that he was subjected to "blowing up planes and derailing trains." (*Id.* at 9). He claims that an unidentified individual "convince[d] me I had a kid," that his "dog [was] poisoned," and "a man wearing a grim reaper costume crossed the street in front of me." (*Id.* at 9-10).

On January 8, 2024, Plaintiff "reported" to Carrie Allen, a Human Resources representative, his concerns of alleged "discrimination, harassment, and intimidation." (Am. Compl. at 9, ¶ 41). In particular, he told her that he believed his "personal life and activities w[ere] being monitored," he was "being followed in the workplace," and that he had "strange, unwelcome conversations regarding people at the company who had been alleged of pedophilia." (*Id.*). Plaintiff told Ms. Allen that "all of these factors seemed out of place and [he] requested an investigation" be conducted. (*Id.*). Ms. Allen was concerned about Plaintiff's display of "paranoid"

behavior, and she took him to Newport News Shipbuilding's clinic. (*Id.* at 10, ¶ 42). Dr. Apostoles, the head of the Clinic, referred Plaintiff for a psychiatric evaluation through Anthem EAP. (*Id.*). Plaintiff agreed to "submit to and fully cooperate in whatever treatment program is required by the Employee Assistance Program." (*Id.* at 10, ¶ 44). Plaintiff also acknowledged that he would be "discharged immediately" if he "fail[ed] to cooperate fully," and that he "understood the . . . conditions I must meet to continue my employment with the Company." (ECF No. 1-6 at 2). Plaintiff was placed on paid leave during the EAP process. (Am. Compl. at 13, ¶ 61).

Plaintiff alleges that the Anthem EAP counselor, Ron Grett ("Grett"), told Plaintiff that he had "to be cleared by a psychiatrist" and directed him to Dr. Stephen Cunningham. (*Id.* at 11, ¶ 49).[3] Six weeks after beginning leave, Plaintiff called Dr. Cunningham's office on February 22, 2024, but was told "there was a $250 fee at the time of scheduling," and he did not schedule an appointment. (*Id.* at 12, ¶ 53). Plaintiff does not plead that he told Grett or anyone at HII that he tried to schedule an appointment with Dr. Cunningham or that he did not want to pay Dr. Cunningham's purported $250 consultation fee. In accordance with the acknowledgment that he would be "discharged immediately" if he "fail[ed] to cooperate fully" with the terms of his EAP, Plaintiff's employment was terminated via a letter on February 23, 2024. (*Id.* at 13, ¶ 58).

## ARGUMENT

## I. STANDARD OF REVIEW FOR A RULE 12(B)(6) MOTION

Federal Rule of Civil Procedure 12(b)(6) allows this Court to dismiss a complaint when it fails, as a matter of law, "to state a claim upon which relief can be granted." Fed. R. Civ. P.

[3] Plaintiff tried to schedule an appointment with a provider named "Dr. Nixon at Hampton Mental Health Associates, but Grett told Plaintiff that Ms. Nixon was "not a physician." (*Id.* at 12, ¶ 53). Plaintiff does not plead that Grett was incorrect about Ms. Nixon's credentials, and her online biography with Hampton Mental Health Associates shows that she is a Nurse Practitioner.

12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the Court "does not require proof of all the elements of a *prima facie* case," Plaintiff still must allege facts that "plausibly meet these elements." *Guirkin v. CMH Physician Servs., LLC*, No. 3:20-cv-59, 2020 WL 6829769, at *5 (E.D. Va. Nov. 20, 2020).

## II. SUMMARY OF THE ARGUMENT

Plaintiff's Amended Complaint alleges six counts, four of which are federal claims and two which are state claims. (Am. Compl. at 16-24). The federal claims include Count I, disability discrimination in violation of the Americans with Disabilities Act ("ADA"); Count II, retaliation in violation of both Title VII and the ADA; Count III, discrimination on the basis of his religious beliefs and sexual orientation in violation of Title VII; and Count IV, a hostile work environment in violation of Title VII and the ADA. Plaintiff's state claims are for defamation (Count V) and intentional infliction of emotional distress ("IIED") (Count VI). This Motion addresses Plaintiff's claims in the order he presented them in the Amended Complaint.

## III. THE ADA DISCRIMINATION CLAIM (COUNT I) FAILS[4]

Plaintiff claims that he was subjected to discrimination in violation of the ADA. Plaintiff's

---

[4] Count I is Plaintiff's cause of action regarding the ADA. (Am. Compl. at 16-17). Plaintiff's original complaint mentioned "failure to accommodate" under Count I, but the Amended Complaint does not include that language. Plaintiff's only specific allegations about accommodations are that HII *granted* his accommodation request in February 2023. (Am. Compl. at 17, ¶78). To the extent Plaintiff did intend to assert a failure to accommodate claim, it would fail given that Plaintiff pled that his February 2023 request was granted and did not plead any facts regarding the July 2023 request. *Ainsworth v. Loudon Cnty. Sch. Bd.*, 851 F. Supp. 2d 963, 981 (E.D. Va. 2012) (granting motion to dismiss failure to accommodate claim when plaintiff did not allege facts showing that "such a request was ever denied"). Further, any failure to accommodate claim is untimely as Plaintiff did not file his EEOC Charge until September of 2024, well outside the window for filing a timely EEOC Charge. *See* Section VI(A) (discussing timeliness); *see Hill v. Hampstead Lester Morton Ct. Partners, LP*, 581 F. App'x 178, 180-181(4th Cir. 2014) ("a defendant's failure to accommodate constitutes a discrete act rather than an ongoing omission").

ADA Discrimination fails for four reasons: first, he failed to plead he was disabled; second, he failed to plead any other adverse action besides termination of employment; third, he failed to plead an inference of discrimination; and fourth, he failed to plead he was meeting HII's expectations at the time of termination.

**A. Plaintiff Failed to Plead a Disability**

Before claiming the protection of the ADA, a plaintiff must plausibly plead that he or she is a qualified individual with a disability. *Rohan v. Networks Presentations, LLC*, 375 F.3d 266, 273 n.9 (4th Cir. 2004) (listing elements of a disability discrimination claim). A "disability" under the ADA can take three different forms: 1) an actual disability; 2) a record of a disability; or 3) being regarded as having a disability. 42 U.S.C. § 12102(1). Plaintiff pleads that he is disabled both because he has a disability (Am. Compl. at 16, ¶ 76) and because HII regarded him as being disabled (*id.* at 16, ¶ 77). Under either definition, Plaintiff fails to plead he was disabled.

1. *Plaintiff Failed to Plead He Was Disabled*

Plaintiff pleads that he has "diagnosed conditions" of "Generalized Anxiety Disorder, Major Depressive Disorder." (*Id.* at 16, ¶ 76). Plaintiff alleges that a year before his termination of employment, he was unable to work rotating shifts due to "exacerbating [of] his symptoms" which were "anxiety and panic attacks," and he requested—and was granted—a change to a "consistent work schedule" on "first shift." (*Id.* at 5, ¶¶ 20-21). Plaintiff claims that these conditions caused him to be "substantially limit[ed]" in the "major life activities" of "thinking, concentrating, sleeping, and working." (Am. Compl. at 16, ¶ 76).

Although Plaintiff's addition of alleged substantial limitations is an apparent attempt to correct his prior Complaint's pleading, Plaintiff does nothing more than provide conclusory labels with no factual underpinning. Plaintiff provides <u>no facts</u> regarding the nature and severity of the

impairment; the duration or expected duration of the impairment; the permanent or long term impact; or the expected permanent or long term impact of or resulting from the impairment—all of which are necessary to plausibly plead that the impairment qualifies as "substantial." 29 C.F.R. § 1630.2(i). Plaintiff's pleading is nothing more than a "naked assertion" devoid of "further factual enhancement." *Bell. Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Plaintiff failed to provide any "factual allegations describing the effects of his various ailments on his daily life," and thus, he failed to plausibly plead he was substantially limited in a major life activity. *Popko v. Penn State Milton S. Hershey Med. Ctr.*, No. 1:13-cv-01845, 2015 WL 4950672, at *3 (M.D. Penn. Aug. 19, 2015) (granting motion to dismiss an amended complaint alleging the plaintiff was "substantially limited in performing the major life activities of eating and sleeping, interacting with other, thinking, concentrating, and judgment" but failed to provide any other factual allegations).[5]

2. *Plaintiff Failed to Plead HII Regarded Him As Disabled*

Plaintiff alleges that HII "regarded" him as "having a disability" because Ms. Allen and Dr. Apostoles told Plaintiff that he "sound[ed] paranoid" and Grett told Plaintiff that he was having "delusions of persecution" and was "completely delusional." (Am. Compl. at 16 ¶ 77).[6] In his

[5] *See also Guabe v. Day Kimball Hosp.*, No. 3:13-cv-1845, 2015 WL 1347000, at *8-9 (D. Conn. Mar. 24, 2015 (granting motion to dismiss when plaintiff only pled "speculative allegations" as to the substantial limitations she supposedly suffered); *Quarles v. Md Dep't of Human Resources*, No. MJG-13-3553, 2014 WL 6941336, at *3, n.8, *4 (D. Md. Dec. 5, 2013) (dismissing ADA claim where plaintiff alleged that her diabetes "limit[ed] her abilities to move freely, walk steps, or travel from building to building" without providing specific allegations to show that major life activities were substantially limited).

[6] In this paragraph, Plaintiff also refers to a prior conversation with his manager, Justin Mani in February 2023, about his accommodation to first shift, and that Mani granted the request. The fact that HII granted the accommodation request is not sufficient to plead that HII regarded Plaintiff as disabled. *Nyrop v. Indep. Sch. Dist. No. 11*, 616 F.3d 728, 736 (8th Cir. 2010) (holding that an employer's "allowance of accommodations" does not establish that the employer regarded an employee as disabled); *Cigan v. Chippewa Falls Sch. Dis.,* 388 F.3d 331, 335 (7th Cir. 2004) (rejecting argument that employer regarded employee as disabled when it granted an accommodation request).

original Complaint, Plaintiff relied on his referral to EAP in support of his regarded-as claim.[7] In his Amended Complaint, he has changed tactics and appears to rely solely on the statements of Ms. Allen, Dr. Apostoles, and Grett in support of his claim. (*Id.*).

a. Grett's Comments Have No Relevance to HII's Perception

Grett's statements have no bearing on whether HII regarded Plaintiff as disabled. First, Grett was employed by the Anthem EAP and was not HII's agent or employee. Second, Grett was unquestionably not entitled to make any termination decisions regarding HII's employees. Third, there are no facts in the Amended Complaint that Grett discussed his perception of Plaintiff with anyone at HII. Indeed, Plaintiff only pleads that Grett told a "colleague" that Plaintiff was "completely delusional," not anyone at HII. (*Id.* at 16, ¶ 77).

b. Ms. Allen's and Dr. Apostoles' Comments Are Not Sufficient

Ms. Allen's and Dr. Apostoles' comments are not sufficient to establish that HII regarded Plaintiff as disabled. First, Ms. Allen's and Dr. Apostoles' description of Plaintiff as "paranoid" is only a "passing reference" and is insufficient to plead a plausible regarded-as disabled claim. *Pence v. Tenneco Auto. Operating Co.*, 169 F. App'x 808, 811 (4th Cir. 2006) ("[N]o rational factfinder could conclude that this passing reference to a belief that [the employee] was paranoid

---

[7] To the extent he continues to rely on the EAP referral, that appears to be in conjunction with arguing that it is evidence of an inference of discrimination, which is addressed below.

was the reason for his termination . . . .").[8] HII's "perception that health problems [were] adversely affecting [Plaintiff's] job performance is not tantamount to regarding [Plaintiff] as disabled. *Pena v. City of Flushing*, 651 F. App'x 415, 420 (6th Cir. 2016) (citations and quotations omitted). Merely being "aware" of Plaintiff's symptoms, "without more, is insufficient to demonstrate either that [HII] regarded [Plaintiff] as disabled or that perception caused the adverse employment action." *Haulbrook v. Michelin N. Am., Inc.*, 252 F.3d 696, 703 (4th Cir. 2001) (footnote omitted).

Second, these references to Plaintiff as "paranoid" do not equate to a belief that Plaintiff had a mental impairment. Rather, **the reference was "descriptive of plaintiff's unusual behavior and statements; they do not show that [Ms. Allen or Dr. Apostoles] regarded him as having a mental impairment. Indeed, the referral to the EAP was to find out the source of his unusual behavior and statements and to provide treatment if necessary."** *Hill v. Delta Air Lines, Inc.*, No. 1:18-cv-05589, 2020 WL 12182139, at *18 (N.D. Ga. June 5, 2020); *see also Morgan v. Cnty. Comm'n of Lawrence Cnty.*, No. 5:14-cv-1823, 2016 WL 352537, at *28 (N.D. Ala. June 20, 2016) (comments by two managers that the plaintiff had "a mental problem" and was "crazy" reflected that "perception of plaintiff as being paranoid" but did not "pertain[] to any cognitive or intellectual deficiency"), *aff'd*, 687 F. App'x 787 (11th Cir. 2017); *Watson v. City of Miami Beach*, 177 F.3d 932 (11th Cir. 1999) (comments that others regarded plaintiff as

---

[8] Where the undisputed facts were nearly identical, the District Court of Maryland held:

> **The evidence is clear that Dr. Sims lost her job because she refused to attend the EAP session, not because the defendants believed she was disabled.** Even assuming the defendants believed Dr. Sims had a mental illness, the EAP referral process was in inquiry into whether she could perform the job. Here, the defendants' 'passing reference" to an employee's paranoia is not sufficient to infer that the employee was fired because of a perceived disability.

*Sims v. Univ. of Md. Med. Sys. Corp.*, No. CCB-19-295, 2022 WL 2275891, at *18 (D. Md. June 23, 2022) (emphasis added) (quotations omitted).

"paranoid" and "unusual" did not rise to the level of an impairment). Indeed, when Plaintiff spoke with Ms. Allen and Dr. Apostoles, he was presenting with unusual behavior and statements including claiming that his "personal life and activities" were "being monitored," and that he was "being followed in the workplace." (Am. Compl. at 9, ¶ 41). Ms. Allen's and Dr. Apostoles' comments were descriptive of Plaintiff's behavior, not that he had a mental impairment.

**B. Plaintiff Failed to Plead An Adverse Action Besides Termination**

Plaintiff adds other actions he believes are adverse for purposes of his ADA Discrimination claim, but none are other than termination of employment. He claims that being placed on "unnecessary medical leave," being forced to "sign a Last Chance Memorandum," and being required to "see a company-chosen psychiatrist" qualify as adverse actions. (*Id.* at 17, ¶ 79).

Although "actions short of termination can constitute an adverse employment action . . . the misconduct must be more than something that offends the employee, and instead, must materially alter the terms, conditions or benefits of the plaintiff's employment." *Credle v. Virginia Cmty. Coll. Sys.*, No. 3:24-CV-233, 2025 WL 27827, at *7 (E.D. Va. Jan. 3, 2025), *aff'd*, No. 25-1072, 2026 WL 509313 (4th Cir. Feb. 24, 2026). All of these additional adverse actions relate to HII's placement of Plaintiff on <u>paid leave</u> pending his EAP evaluation, which cannot qualify as an adverse action. Indeed, "Courts in the Fourth Circuit have held that placement on administrative leave with pay <u>does not constitute an adverse employment action</u>." *Id.* (emphasis added). The only plausible adverse action Plaintiff pled is his termination of employment.

**C. Plaintiff Failed to Plead an Inference of Discrimination**

Plaintiff failed to sufficiently allege that "the circumstances of h[is] discharge raise a reasonable inference of unlawful discrimination." *Rohan*, 375 F.3d at 272, n.9. Here, the only inference Plaintiff pleads between his alleged disability and termination of employment is the fact

that he was referred to an EAP. However, referral to an EAP is not enough to plead an inference of discrimination.[9] *See Delia v. Donahoe*, 862 F. Supp. 2d 196, 219 (E.D.N.Y. 2012) (holding that referral to an EAP, among other actions, was not sufficient to "permit[] an inference of discrimination"). It is logical that a medical examination would be insufficient to plead an inference because employers are permitted to "require a medical examination (and/or inquiry) of an employee that is job-related and consistent with business necessity." 29 C.F.R. § 1630.14(c). If referral for an evaluation was always sufficient to plead an inference of discrimination, employers would be limited in seeking an evaluation in the first place. Indeed, every referral would subject an employer to an inference of discrimination, and this cannot be the case given that the ADA allows employers to require medical examinations.

To the extent that Plaintiff argues that referral to the EAP was itself an act that infers discrimination, for the same reason it is not.[10] HII was well within the bounds of the ADA to require Plaintiff to submit to an EAP evaluation. 29 C.F.R. pt. 1630, App'x § 1630.14(c).[11] Indeed,

---

[9] If Plaintiff's argument is that Ms. Allen's and Dr. Apostoles' reference to paranoia is sufficient to raise an inference of paranoia, it does not. *Pence*, 169 F. App'x at 811 ("[N]o rational factfinder could conclude that this passing reference to a belief that [the employee] was paranoid was the reason for his termination . . . .").

[10] Plaintiff says that "[t]he EAP referral and evaluation required was not a good-faith fitness-for-duty inquiry but a mechanism constructed to manufacture grounds . . . in furtherance of discrimination based on Defendant's perception of Plaintiff as mentally disabled." (Am. Compl. at 14, ¶ 62).

[11] Of note, Plaintiff's Amended Complaint (like his original Complaint) only alleges indirect evidence of discrimination. Neither HII's referral of Plaintiff to the EAP nor his termination of employment for refusing to comply is direct evidence of discrimination because both require an inference of discrimination. *See Jenkins v. Med. Labs of E. Iowa,* 880 F. Supp. 2d 976, 958-60 (N.D. Iowa 2012) (concluding that an employer's referral of an employee to a mandatory EAP did not constitute direct evidence of discrimination because the factfinder would need to make "two major inferences"; that the decision-maker believed the employee "was mentally disabled" in requiring that she go to the EAP and that "this belief motivated [the employer's] decision to terminate [the employee]"); *Dengel v. Waukesha Cnty.*, 16 F. Supp. 3d 983, 997 (E.D. Wis. 2014)

requiring Plaintiff to submit to an examination "ordered for valid reasons" (here, Plaintiff's unusual behavior and statements) cannot "prove discrimination." *Pena*, 651 F. App'x at 422.

**D. Plaintiff Failed to Plead Causation**

Besides failing to plead an inference of discrimination, Plaintiff also failed to plead causation, i.e. a link, between his supposed disability and his termination. For a wrongful termination claim, causation requires that the plaintiff plead that the "disability was the 'but-for' cause of an adverse employment decision." *Davis v. W. Carolina Univ.*, 695 F. App'x 686, 688 (4th Cir. 2017). The ADA's "but-for" causation standard precludes "mixed motive" causation: "If an employer acts with a mixed motive—both a discriminatory and non-discriminatory reason—then the employer is not liable. In other words, causation requires disability to be more than *a* motivating factor: it must be *the only* motivating factor." *Id.* (emphasis in original).

Plaintiff admits in his Amended Complaint (as he did in his original complaint) that he did not comply with Grett's requirement that he see Dr. Cunningham; accordingly, his termination was motivated, at least in part, by his failure to comply with the EAP referral,[12] which is certainly a non-discriminatory reason for his termination. As such, he pled himself out of the ADA's causation standard by pleading that HII acted with a mixed motive.[13] Plaintiff himself "attributes his termination to several motives, at least some of which were non-discriminatory." *Alford v.*

---

(finding no direct evidence where plaintiff was discharged because he "refused to cooperate with the County's expectations" to sign "waivers and undergo the required examinations").

[12] Plaintiff does not allege that he could not comply with the EAP referral due to his diagnoses.

[13] The ADA's causation standard is arguably designed to prevent the illogical conclusion Plaintiff advances. Plaintiff pled that HII terminated Plaintiff weeks after referring him to EAP. If HII truly regarded Plaintiff as disabled, then arguably HII would have terminated him outright, rather than placing him on paid leave and referring him to EAP.

*Dep't. of Commerce*, No. 7:25-cv-418, 2026 WL 957667, at *5 (E.D.N.C. Mar. 10, 2026) (granting motion to dismiss when plaintiff alleged that one of the "grounds for his termination" was for lying on a mileage reimbursement, among other reasons), *report and recommendation adopted*, 2026 WL 950801 (E.D.N.C. 2026).[14] Plaintiff's Complaint pleads a mixed motive, which is fatal to his ADA claim for wrongful termination.

### E. Plaintiff Failed to Plead He Was Meeting HII's Expectations

Plaintiff failed to plead facts sufficient to allege that he was "performing h[is] job at a level that met [HII's] legitimate expectations." *Jacobs v. N.C. Admin. Off. of the Cts.*, 780 F.3d 562, 572 (4th Cir. 2015). In an apparent attempt to correct his prior deficient pleading, Plaintiff adds one word to his Amended Complaint: "**consistently**." (Am. Compl. at 4, ¶ 19 ("Plaintiff consistently met Defendant's performance expectations . . ."). However, Plaintiff's performance when he was working <u>prior</u> to the EAP referral "is not sufficient to meet h[is] burden." *Mattamu v. Cnty. of Fairfax*, No. 1:20-cv-1468, 2021 WL 4477300, at *4 (E.D. Va. Sep. 30, 2021) (granting motion to dismiss based on failure to plead adequate performance at the time of discharge). Even if Plaintiff was meeting performance expectations when he was actively working, he certainly was not weeks later during leave and at the time of his termination.

When considering whether an employee plausibly pled he or she had satisfactory job performance, "the employer's performance expectations . . . are the relevant inquiry" <u>not</u> the employee's "subjective beliefs regarding the adequacy of his job performance." *Luther v.*

---

[14] *See also Thornock v. JES Foundation Repair*, No. 7:23-cv-638, 2024 WL 1739755, at *8 (W.D. Va. Apr. 23, 2024) (granting motion to dismiss when the plaintiff alleged no facts that his "suicidal ideations and poor mental health" caused his termination); *Gray v. Columbia Gas of Va., Inc.*, No. 2:18-cv-475, 2019 WL 13295820, at *4 (E.D. Va. Jan. 14, 2019) (granting motion to dismiss disability discrimination claim because the "causal relationship between" the plaintiff's disability "and his discharge is broken by his failure to pass the 2015 test," which was a non-discriminatory motive for the termination).

*Gutierrez*, 618 F. Supp. 2d 483, 492 (E.D. Va. 2009). Plaintiff does not plead that he was performing adequately at the time of his discharge. Rather, **he pled the opposite** by stating that Ms. Allen "told [him] he could not return to work until cleared by . . . a psychiatrist," (Am. Compl. at 10, ¶ 46). Yet, six weeks after being referred for an EAP evaluation, he had not complied due to his failure to schedule an appointment. Plaintiff also did not plead that he told either Grett or Ms. Allen that he had attempted to schedule an appointment with Dr. Cunningham or did not want to pay Dr. Cunningham's purported $250 consultation fee.

If an employee pleads facts that demonstrate that, "from the perspective of h[is] employer," his "job performance was not meeting h[is] employer's expectations when [he] was terminated," then an employee cannot plausibly plead a wrongful termination claim. *Strothers v. City of Laurel, Md.*, 118 F. Supp. 3d 852, 853 (D. Md. 2015) (holding that the plaintiff failed to state a claim of satisfactory job performance when, among other facts, the plaintiff pled that she received "an evaluation rating her 'unsatisfactory'").[15] An "admission" that a plaintiff was not performing adequately is "fatal because it renders any inference of invidious discrimination not plausible in light of the obvious alternative explanation." *Stokes v. AMF Bakery Sys.* No. 3:24-cv-789, 2025 WL 2459089, at *13 (E.D. Va. Aug. 26, 2025) (citation omitted) (granting motion to dismiss). Plaintiff admitted he was not performing to HII's expectations at the time of his termination due to his failure to comply with the EAP referral, and his discrimination claim thus fails.

[15] *See also Bradley v. Gannett Co., Inc.*, No. 1:23-cv-1100, 2025 WL 2533504, at *11 (E.D. Va. Sep. 3, 2025) (granting motion to dismiss based on the failure to "plead that [the plaintiff] was satisfactorily performing her job at the time of her discharge," because the plaintiff pled that "she had been informed that her performance was 'not up to par' and that she was placed on a performance plan"); *Edouard v. John S. Connor, Inc.*, No. 2:22cv263, 2023 WL 3127622, at *4 (E.D. Va. Apr. 27, 2023) (J., Davis) (granting motion to dismiss on wrongful termination claim due to plaintiff's failure to "plead" any "facts" or "allegation[s] that she was meeting [the employer's] 'legitimate expectations' at the time of her termination").

## IV. THE RETALIATION CLAIM (COUNT II) FAILS

Plaintiff alleges that he was retaliated against in violation of ADA after he requested an accommodation in February 2023, and later in violation of Title VII and the ADA, after he complained to Ms. Allen in January 2024. (Am. Compl. at 17 ¶¶ 82-83). Plaintiff's retaliation claim fails for two reasons. First, the majority of actions he pleads are not materially adverse actions. *EEOC v. Navy Fed. Credit Union*, 424 F.3d 397, 405-06 (4th Cir. 2005) (discussing elements of retaliation claim). Second, he did not plead facts to plausibly allege a causal connection between the protected activity and the adverse action of his termination of employment. *Id.*

### A. Only Plaintiff's Termination is a Materially Adverse Action

A materially adverse action is one that is serious enough to "dissuade[] a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006). Further, there must be some kind of "significant harm" suffered by the plaintiff in order to qualify as a materially adverse action. *Herkert v. Bisignano*, 151 F.4th 157, 166 (4th Cir. 2025). In his original Complaint, the only materially adverse action Plaintiff pled was his termination of employment. In an attempt to save his retaliation claim, Plaintiff amended this count by adding a series of actions he claims were in response to his complaints including:

A. "harassment, intimidation, and hazing following his accommodation request;"

B. "threats of physical violence;"

C. "a threat communicated by a coworker that 'the government can be used to make someone's life difficult' which Plaintiff reasonably understood as a threat of government-related retaliation if he did not abandon his accommodation;"

D. "retaliatory assignment to supervising furniture delivery;"

E. "removal from the workplace via spectacle;"

F. "coerced medical leave;" and,

G. "forced signing of Last Chance Memorandum." (Am. Compl. at 18, ¶84).

None of these qualify as materially adverse actions for four reasons. First, for Actions A through C, the actions were initiated by co-workers who had no knowledge of Plaintiff's accommodation request to his supervisor. Second, for Action D, it was a single day event. Third, Plaintiff was not dissuaded from complaining to Ms. Allen because Actions A through D all occurred *prior* to Plaintiff's complaint to Ms. Allen. Fourth, Actions E through G all relate to Plaintiff's placement on leave after exhibiting objectively unusual behavior.

More fully, Plaintiff has not alleged any facts that Actions A through C involved the supervisor, Mani, who received and approved Plaintiff's February 2023 accommodation request.[16] Thus, there is no causal connection between Plaintiff's protected activity (the February 2023 accommodation request to Mani) and the alleged adverse actions which came from unidentified co-workers. *Sunkins v. Hampton Rds. Connector Partners*, 701 F. Supp. 3d 342, 359 (E.D. Va. Nov. 9, 2023) (granting motion to dismiss retaliation claim that was premised on co-worker's action who had no knowledge of protected activity).

Second, as for Action D, this was a one-day event. (Am. Compl. at 8, ¶ 35). This brief duration certainly is not sufficient to allege a materially adverse action when Plaintiff has not pled that, as a result of the one-day assignment, his pay changed or he suffered any other detriment. *Shannon v. Va. Dep't of Juvenile Justice*, No. 3:06-cv-413, 2007 WL 1071973, at *4 (E.D. Va. Apr. 4, 2007) (holding that because a "transfer did not affect [the Plaintiff's] salary or benefits," the reassignment was not "materially adverse") *aff'd*, 258 F. App'x 583 (4th Cir. 2007).

[16] Neither does Plaintiff allege that Ron Rogers, who received the July 2023 request, was involved in these actions.

Third, although the materially adverse action standard is objective, *see Burlington*, 548 U.S. at 68-69, it is worth noting that Plaintiff, himself, was not dissuaded from making a complaint to Ms. Allen after Actions A through D. It would be an odd conclusion, indeed, to find that a reasonable person would have been dissuaded from making a complaint when Plaintiff was not, in fact, dissuaded in any way by the conduct described in Actions A through D.

Finally, Actions E through G, all of which relate to Plaintiff's placement on leave pending his EAP referral, are not materially adverse actions because Plaintiff was placed on paid leave.[17] "Courts have generally held that an employer's placement of an employee on paid leave pending an investigation and requiring an employee to submit to a fitness for duty examination are not materially adverse employment actions." *Pearson v. Prince William Cty Sch. Bd.*, No. 2021 WL 1150068, at *12 (E.D. Va. Mar. 25, 2021) (collecting numerous cases). Neither referral to an EAP nor being required to comply with particular terms of an EAP are materially adverse actions. *Ndzerre v. Wash. Metro. Area Transit Auth.,* 275 F. Supp. 3d 159, 166 (D.D.C. 2017) ("[T]his Court has not found . . . a single case where a Court has held that referral to an EAP constitutes an adverse employment action.").

**B. Plaintiff Fails to Plead Causation**

Left with only termination as an adverse action, Plaintiff fails to plead causation between the protected activity and the adverse action of his termination of employment.[18] Plaintiff was

---

[17] As Plaintiff himself pleads, the leave was paid through Short Term Disability benefits funded by HII. (Am. Compl. at 13, ¶ 61).

[18] It is appropriate for this Court to consider the plausibility of causation at the motion to dismiss stage as the Fourth Circuit did so in *Laurent-Workman v. Wormuth*, 54 F.4th 201, 219 (4th Cir. 2022) (affirming in part lower court's grant of motion to dismiss and holding that a "two-month temporal gap between . . . the complaint and the adverse action is sufficiently long so as to weaken significantly the inference of causation between the two events").

placed on paid leave and referred to the EAP on January 8, 2024. (Am. Compl. at 10, ¶ 43). He was terminated seven (7) weeks later at the end of February, 2024. (*Id.* at 13, ¶ 58). There are no allegations in the Complaint between the referral to EAP and his termination regarding HII's conduct besides the fact that Plaintiff was paid during the leave.

The nearly **two-month period** (seven weeks) between Plaintiff's report to Ms. Allen and his termination, and the **one-year period** between Plaintiff's accommodation request in February 2023 and his termination, is "sufficiently long so as to weaken significantly the inference of causation between the two events" and, alone, it cannot establish causation. *King v. Rumsfeld*, 328 F.3d 145, 151 n.5 (4th Cir. 2003) (explaining that ten-week period between protected activity and adverse employment action was too tenuous alone to support causation); *Laurent-Workman*, 54 F.4th at 219 (4th Cir. 2022) (holding that a "two-month temporal gap between . . . the complaint and the adverse action is sufficiently long so as to weaken significantly the inference of causation between the two events"); *EEOC v. Yellow Freight Sys., Inc.,* 253 F.3d 943, 952-53 (7th Cir. 2001) (six week period insufficient to establish causation); *Wood v. Bristol Va. Utility Auth*., 661 F. Supp. 3d 538, 553 (W.D. Va. 2023) (granting motion to dismiss in part and holding that a "sixty-two day" period was "too long to establish causation by temporal proximity alone"); *Williams v. Fairfield Mem'l Hosp.*, No. 0:19-cv-183, 2020 WL 2573386, at *7 (D.S.C. May 6, 2020) (eight week period insufficient to plead causation), *report and recommendation adopted,* 2020 WL 2572277 (D.S.C. May 21, 2020).

### C. Plaintiff Pled an Intervening Act

Even if the temporal proximity between his protected activity and termination was sufficient to plead causation, Plaintiff himself pled an intervening event that interrupts any inferential nexus between his complaint and his termination. That intervening event is his admitted

refusal to complete an evaluation when required to do so. Plaintiff was warned that he would be "discharged immediately" if he "fail[ed] to cooperate" with the EAP referral. (Am. Compl. at 10, ¶ 45). Plaintiff pleads that he did not call to schedule the appointment with Dr. Cunningham until six weeks after being placed on leave and, even then, he did not actually schedule the appointment.

Plaintiff's failure to comply with the referral for six weeks, and his failure to notify Grett or HII that he had called to make an appointment but was dissuaded by an alleged consultation fee, severs any causal connection that could arise by reason of temporal proximity. *Horne v. Reznick Fedder & Silverman*, 154 F. App'x 361, 364 (4th Cir. 2005) (noting that when poor performance occurred after a complaint of discrimination the causal connection was broken due to the intervening act of poor performance) (citations omitted). Further, there are no facts in the Amended Complaint to plead that either Grett or HII even knew that Plaintiff had called to make an appointment with Dr. Cunningham but was dissuaded by an alleged consultation fee. Instead, by Plaintiff's own pleadings, Grett and HII knew only Plaintiff had failed to comply despite having been notified of the requirement weeks prior.[19]

## V. THE TITLE VII DISCRIMINATION CLAIM (COUNT III) FAILS

In addition to claiming that he was wrongfully terminated on the basis of his disability, Plaintiff also claims he was discriminated against on the basis of his religious beliefs (atheist) and his sexual orientation (queer) in violation of Title VII. (Am. Compl. at 19, ¶ 93). Plaintiff pleads that he was subjected to "hostile remarks," "the use of slurs and derogatory terms," "mock[ing of] his beliefs," and "treat[ing] him less favorably than other employees." (*Id.* at ¶ 94).

[19] Plaintiff pleads that Grett told him he needed to be cleared by a licensed psychiatrist shortly after his first meeting with Grett when he began leave. (Am. Compl. at 11, ¶ 49).

### A. None of Plaintiff's "Other" Actions Are Adverse

HII will address first Plaintiff's adverse actions other than termination that he added into his Amended Complaint. The alleged hostile remarks, use of slurs and derogatory terms, and mocking are not adverse actions for purposes of a Title VII discrimination claim. *See Foster v. Univ. of Maryland-Eastern Shore*, 787 F.3d 243, 250 (4th Cir. 2015) (discussing elements of Title VII claim). Although "actions short of termination can constitute an adverse employment action . . . the misconduct must be more than something that offends the employee, and instead, must materially alter the terms, conditions, or benefits of the plaintiff's employment." *Credle,* 2025 WL 27827, at *7. Plaintiff has not identified any terms and conditions of employment that were altered by these supposed actions, and as such, they fail to qualify as adverse actions. *Id.*, at *9 (granting motion to dismiss and holding that even post-*Muldrow*, plaintiffs must plead some "harm respecting an identifiable term or condition of employment").

Plaintiff also makes vague and unspecified allegations that he was "treated . . . less favorably than other employees" and received "unequal conditions of employment." (Am. Compl. 19, at ¶¶ 92, 93). However, nowhere does he identify *how* he was treated less favorably, nor does he identify any comparators who were treated more favorably. At most, there is a reference in the Attachments to an unidentified "gay man" who was "treated better" than Plaintiff. (ECF No. 1-3 at 14). That certainly is not sufficient given that this unidentified individual *shared* Plaintiff's same protected characteristic, and Plaintiff provides no information about how this individual was supposedly "treated better" than Plaintiff. None of the actions Plaintiff identifies prior to termination are sufficiently pled adverse actions for purposes of Title VII.

### B. Plaintiff Failed to Plead a Plausible Wrongful Termination Claim

Turning to Plaintiff's claim for wrongful termination, HII does not dispute, for purposes of

this Motion, that his termination was an adverse action. However, Plaintiff failed to plausibly plead the third and fourth elements of the wrongful termination claim: that he met HII's performance expectations at the time of his termination and that his position was filled by a similarly qualified applicant outside of his protected class. *Guessous v. Fairview Prop. Invs., LLC*, 828 F.3d 208, 219 (4th Cir. 2016) (listing elements for Title VII claim). He also failed to plead that his religious beliefs and sexual orientation were motivating factors in his termination. Together, these are three reasons for why Plaintiff's Title VII wrongful termination claim fails.

1. *Plaintiff Failed to Plead Satisfactory Job Performance*

The analysis under Title VII regarding satisfactory job performance is the same as that for the ADA. *See Estes v. Va. Peninsula Regional Jail*, No. 4:11-cv-466, 2012 WL 8134467, at *2 (E.D. Va. June 12, 2012) (noting commonality of elements). HII refers the Court back to Section III(E) for a fulsome discussion of how Plaintiff failed to plead satisfactory job performance.

2. *Plaintiff Did Not Plead That He Was Replaced*

There is not a single mention of Plaintiff's replacement in the Amended Complaint, and this pleading failure is fatal to his Title VII wrongful termination claim. This error is even more problematic considering that HII raised this same issue in response to Plaintiff's original Complaint, yet Plaintiff failed to include any facts on this issue in his Amended Complaint.

"[I]t is well-settled in the Fourth Circuit that, under ordinary circumstances, a plaintiff must show that the position was filled by somebody outside of the protected class in order to make out a *prima facie* case for discriminatory discharge" under Title VII. *Strothers*, 118 F. Supp. 3d at 863. Indeed, when the alleged adverse action is termination, as it is here, a plaintiff must plead that they were replaced by someone outside of their protected class. *Miles v. Dell Inc.*, 429 F.3d 480, 486 (4th Cir. 2005). Plaintiff's Amended Complaint fails to include any facts that he was

replaced, and as such, he failed to plead the final element of a wrongful termination claim.

3. *Plaintiff Did Not Plead Motivating Factors*

Plaintiff failed to plead facts to plausibly allege that his religious beliefs and sexual orientation were motivating factors in his termination, as required to state a claim under Title VII. *See Univ. of Tex. Southwestern Med. Ctr. v. Nassar*, 570 U.S. 338, 343 (2013). Plaintiff claims that unidentified co-workers made "hostile remarks targeting his religious beliefs and sexual orientation." (Am. Compl. at 9, ¶ 39). However, there are no facts pled to connect Plaintiff's termination to these unidentified harassers and their unidentified remarks. Plaintiff pleads that Ms. Allen, a Human Resources representative, terminated his employment by virtue of a written termination notice after Plaintiff admittedly failed to comply with the EAP. (*Id.* at 13, ¶ 58). Notably, Plaintiff does not plead that any of the unidentified "co-workers" from the year prior played any role in the decision to terminate his employment, nor does he plead that he told Ms. Allen his religious beliefs or sexual orientation. Based on these allegations, there is "no factual basis for the Court to infer that [Plaintiff's] primary harassers had any role in the decision to discharge [Plaintiff]." *Edouard* 2023 WL 3127622, at *5 (granting motion to dismiss wrongful termination claim because there were no facts pled that the "harasser . . . had any role in the decision to discharge Plaintiff"). Absent any connection between the individuals who allegedly harbored discriminatory animus and his termination, Plaintiff's wrongful termination claim fails.

## VI. THE HOSTILE WORK ENVIRONMENT CLAIM (COUNT IV) FAILS

Plaintiff claims that he was subjected to a hostile work environment on the basis of his religious beliefs and sexual orientation in violation of Title VII and on the basis of his disability in violation of the ADA. These hostile work environment claims fail because i) they are untimely; ii) Plaintiff did not plead he was subjected to severe or pervasive conduct; and iii) he did not plead

facts to allege that HII or its employees were the alleged harassers.

### A. Plaintiff's Claims Are Untimely

A charge of discrimination must be filed with the Equal Employment Opportunity Commission within 300 days "from the date of discrimination." *Smith v. Strayer Univ. Corp.*, 79 F. Supp. 3d 591, 598 (E.D. Va. 2015). If an employee does not submit a timely EEOC Charge, he may not challenge the alleged discrimination in court; even if a discriminatory act did occur, it "is merely an unfortunate event in history which has no present legal consequences." *Ledbetter v. Goodyear Tire & Rubber Co*., 550 U.S. 618, 626 (2007) (quoting *United Air Lines, Inc. v. Evans*, 431 U.S. 553, 557 (1977)). Plaintiff filed his EEOC Charge on September 30, 2024. (Am. Compl. at 3, ¶ 12). As such, conduct that occurred before December 5, 2023 (300 days prior) is time-barred.

Plaintiff added a three-page list of events he believes constituted harassment. (Am. Compl. at 6-8). However, there are only three incidents dated after December 5, 2023. The first occurred on December 6, 2023, when a co-worker told Plaintiff "feel free to scribble," and another co-worker said that Plaintiff had "a list with new stuff by the copier. 10-12 things." (*Id.* at 8, ¶ 36). The second occurred on December 19, 2023 when Plaintiff was "last" in a "white elephant gift exchange" and "received a cheap flashlight." (*Id.* at 8, ¶ 37). The third occurred on January 2, 2024 when an unidentified "vehicle attempted to collide with Plaintiff's car." (*Id.* at 8, ¶ 38).[20] None of these remotely constitute severe or pervasive conduct, and as such, Plaintiff's hostile work environment claim is untimely. *EEOC v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 310 (4th Cir. 2008) (holding that

[20] Plaintiff also failed to plead that the incident was connected to HII. He claims that the near-miss car accident "mimicked [a scenario] discussed previously at his place of work before the incident occurred, demonstrating that the speakers had knowledge of the event before it occurred." (*Id.*). This is not sufficient to link HII or its employees to the incident.

"rude treatment by coworkers," and "callous behavior" is "not actionable under Title VII").[21]

**B. Plaintiff Failed to Plead Severe or Pervasive Conduct**

Even if Plaintiff's hostile work environment claim was somehow timely, which it is not, it would still fail due to his failure to plead severe or pervasive conduct. Plaintiff was required to allege that "the workplace [was] permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of his employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993). The severe or pervasive conduct test is a "high bar." *Sunbelt Rentals,* 521 F.3d at 315.

1. *Specific Facts Pled in the Amended Complaint and Attachment*

Plaintiff revised his Amended Complaint to copy a number (but not all) of the specific allegations from the Attachments into the complaint itself. However, many of the allegations in the Amended Complaint and Attachments are nothing "more than rude treatment" and "callous behavior" that is not actionable. *Sunbelt Rentals,* 521 F.3d at 315.

In the oft-quoted words of the Supreme Court in *Faragher,* "the sporadic use of abusive language, and [offensive] jokes" are not actionable; neither Title VII nor the ADA is a "general civility code." *Faragher v. City of Boca Raton*, 524 U.S. 775, 778 (1998). Although it is unfortunate that Plaintiff's co-workers hid his personal belongings on one occasion as a joke or discussed unprofessional topics like genocide, that is not actionable. The fact that Plaintiff endured unapproved vacation, awkward social events, someone eating his lunch, and being last to go at a white elephant gift exchange are normal workplace stresses, not actionable harassment.

[21] Plaintiff mentions the continuing violation theory, (Am. Compl. at 4, ¶ 15), but absent any violation within the required time period, it is inapposite. *Woodard v. Lehman*, 717 F.2d 909, 914-15 (4th Cir. 1983) ("It is *only* where an actual violation has occurred within that requisite time period that. . . the theory of continuing violation is sustainable.") (italics in original) (footnote omitted).

The following is a list of each particular incident Plaintiff pled in the Amended Complaint, prior to December 5, 2023, all of which fail to qualify as severe or pervasive conduct:

- On February 22, 2023, a co-worker hid Plaintiff's computer access chip as a joke; other employees "laughed as Plaintiff searched for it for over an hour." (Am. Compl. at 6, ¶ 25).
- Sometime in 2023, a co-worker told Plaintiff that "the government can be used to make someone's life very difficult." (*Id.* at 6, ¶27)
- On June 26, 2023, a co-worker said to Plaintiff that "all of the other managers were in agreement and that people usually break by now;" this same co-worker said he was "pressure testing" Plaintiff. (*Id.* at 7, ¶ 29).
- On July 20, 2023, Plaintiff's supervisor discouraged taking vacation leave, stating "I can't tell you not to go on vacation but nobody is going to want to work with you." (*Id.* at ¶ 30).
- On August 23, 2023, a co-worker suggested to Plaintiff that he read a book that was already on Plaintiff's bookshelf at his home. (*Id.* at ¶ 31).
- On August 23, 2023, he overheard co-workers discuss "drawing and quartering, various torture and execution methods, and indigenous population genocide." (*Id.* at 8, ¶ 33).
- On August 23, 2023, a co-worker asked Plaintiff "if he had seen the news about the Russian opposition leader dying in a plane crash." (*Id.*).
- On August 24, 2023, a co-worker said to Plaintiff, "I'm going to knock the stupid out of you." (*Id.* at ¶ 34).
- On September 12, 2023, Plaintiff was reassigned for one day to supervise furniture delivery in the department. (*Id.* at ¶ 35).
- On December 6, 2023, a co-worker told Plaintiff "feel free to scribble," and another co-worker said that Plaintiff had "a list with new stuff by the copier. 10-12 things." (*Id.* at ¶ 36).
- On December 19, 2023, Plaintiff claims he was subjected to "hazing" because he was "last" in a "white elephant gift exchange" and "received a cheap flashlight." (*Id.* at ¶ 37).

Further, there are multiple allegations in the Attachments—which Plaintiff continues to rely on—that are similarly not severe or pervasive. These allegations include:

- "people being overly loud;"
- work was "making it harder than it had to be it seems;"
- describing a "work event at Hooters were [sic] folks were awkward toward me;"

- "shipyard thugs . . . were rude to everyone;"
- "food taken from fridge. Someone ate my calzone?"

(ECF No. 1-3 at 4-10). Plaintiff's attempt to add more specific facts to his Amended Complaint, but rather than demonstrating the plausibility of his claim, his amendment conclusively demonstrates that he cannot plead severe or pervasive conduct.

2. *Unspecified Facts in the Amended Complaint and Attachments*

Although Plaintiff attempted to add more specific facts to his Amended Complaint, he still includes many vague allegations. For example, he claims that "throughout 2023," coworkers made "derogatory comments," "exclude[ed] Plaintiff from workplace interactions," and made "references to Plaintiff's personal life indicating he was being monitored." (Am. Compl. at 6, ¶ 26). Plaintiff believes he was subjected to an "old boys club culture" (*Id.* at 7, ¶ 28). He also claims that unidentified coworkers and supervisors made "comments alluding to Plaintiff's personal life outside of work, including references to specific information regarding the inside of his home." (*Id.* at 6, ¶ 27). Plaintiff also claims that unidentified coworkers "made hostile remarks targeting his religious beliefs and sexual orientation." (*Id.* at 9, ¶ 39).

These unspecific allegations come nowhere close to pleading a plausible claim as they do not include even "modest details that would allow the Court to assess the frequency and severity of allegedly harassing conduct." *Carroll v. Amazon Data Servs., Inc.* No. 1:21-cv-1177, 2022 WL 3161895, at *6 (E.D. Va. Aug. 8, 2022) (granting motion to dismiss hostile work environment claim); *see also, Steele v. Blinken*, No. 1:22-cv-35, 2022 WL 11964563, at *6 (E.D. Va. Oct. 19, 2022) ("Without pleading additional detail as to the specifics of actions by plaintiff's colleagues and/or supervisors, plaintiff fails to push the allegation across the threshold from inappropriate workplace conduct to actionable harassment."), *aff'd*, No. 22-2178, 2024 WL 2815123 (4th Cir.

2024); *Jones v. HCA*, 16 F. Supp. 3d 622, 630-31 (E.D. Va. 2014) (dismissing hostile work environment claim where plaintiff failed to plead any specific allegation that could "shed any light into [the] severity or frequency" and noting that a complaint "must indicate a pattern of extremely abusive language or otherwise pervasive conduct based on the plaintiff's" protected characteristic).

### C. Plaintiff Fails to Plead Facts to Impute Liability

Plaintiff continues to rely on a number of other bizarre incidents, none of which involve HII or its employees at all, and occurred off-site and during non-working hours. These allegations have no connection to Plaintiff's alleged disability, sexual orientation, or religious beliefs. Plaintiff alleged that he was being "followed in public, including on his commute" (Am. Compl. at 6, ¶ 27). Further, he claimed that an unidentified "vehicle attempted to collide with Plaintiff's car." (*Id.* at 8, ¶ 38). Oddly enough, Plaintiff *expands* the bizarre nature of his claims in the Amended Complaint and alleges that, three years later and after his move to California, unidentified individuals are engaging in "surveillance, harassment, intimidation, and other forms of retaliation" which "**continue into the present and now seem directed at pressuring the plaintiff into abandoning his case or obstructing his ability to bring the case safely**." (*Id.* at 5, ¶ 23).[22] Plaintiff claims that when he "attempt[s] to print legal documents or mail court-related materials, he experience[s] worsening repercussions." (*Id.* at 6, ¶ 24). Plaintiff claims that he has been subjected to "stalking, threats of gun violence, monitoring, or cyber-stalking" after filing suit. (*Id.* at 15, ¶ 67).

The Attachments provide further detail regarding events that are not connected to HII:

[22] Besides being utterly bizarre, this supposed post-employment conduct was not administratively exhausted in his EEOC charge, and thus is not subject to the instant suit. *King v. Seaboard C.L.R. Co.*, 538 F.2d 581, 583 (4th Cir. 1976) (holding that the EEOC charge fixes the scope of the subsequent suit); *Belcher v. Bassett Furniture Indus., Inc.*, 376 F. Supp. 593, 596 (W.D. Va. 1974) (holding that "the fact that some charge of discrimination was filed with the EEOC does not allow a later suit on any ground which may later occur to a party").

- 4/9/23 – "I was followed around the graveyard and the American Legion chapter leader kept remarking on 'properly retiring' flags"
- 5/5/23 – "Semi-truck collision"
- 5/7/23 – "Car Broken Into. Work Documents stolen from backpack."
- 5/26/23 – "I and two other people I know had recently been rear-ended."
- 6/6/23 – "Psyop about me having a child which my ex didn't tell me about. Other psyops involved false claims about drug residue on my patio . . . and psyops regarding hard drives I had stored in my closet."
- 6/14/23 – "Got tailed the whole way home bc [because] I think they read my texts explaining the situation to my brother."
- 6/17/23 – describing home break-in
- 6/22/23 – claiming to be a "Targeted Individual"
- 6/24/23 – claiming to be "followed"
- 6/27/23 – "Partner's vehicle sabotaged; coolant line disconnected. Email from work mentioned ventilation or cooling work."
- 7/5/23 "Another engineered car crash outside SO's [significant other's] apartment (no airbag, obvious actors). . . . Followed from Virginia to Florida. People onboard the bus, driver fled, U.S. Marshals tags observed. 'Flee country' psyop via Uber."
- 7/11/23 "Followed to Portsmouth."
- 7/27/23 "Weird Hotel California sound clips available during 4 hour test. About not being able to escape a place."
- 9/28/23 – claims he was subject to "coercion techniques" from unidentified individuals including "gangstalking threats of violence, blackmail, bugging home, bugging vehicle, vehicular harassment, vehicular sabotage, shunning, public dissemination of personal info, threats against family/friends, publicizing health information, home invasion, police harassment/intimidation, court harassment, assault, accidents, spyware on phone/TV /laptop electronics, AI personality modeling, psychological operations, perception management, programs, public radio/internet radio data breach/private investigation."
- 9/28/23 – claims he was subject to "specific violent acts threatened/implied" by unidentified individuals including "stabbing, jumping, vehicular assault, shooting point blank, long distance rifle, blowing up planes, derailing trains, poison, giving STDs, planting diseases, introducing cancerous cells, giving me AIDS HIV, atmosphere tampering, indoors O2, CO2, CO introduction . . . bribery, favors, filming private/sexual encounters in my own home/girlfriend apartment, false flags, convince me I had a kid, poisoning, mold, transmitting and [sic] STD via hand."
- 10/4/23 – "dog poisoned"
- 12/6/23 – "I was being watched"
- 1/2/24 – "Car tried to hit me" and "a man wearing a grim reaper costume crossed the street

in front of me."

(ECF No. 1-3 at 4-10). These are bizarre and incredulous allegations, to say the least. None have any causal connection to Plaintiff's protected characteristics, nor are they related to HII or any HII employee, and they did not occur on the worksite or during work hours. The Court need not analyze the incredulous nature of these allegations because they all share one commonality that is fatal to Plaintiff's claim: <u>none of them are attributed to HII or its employees.</u>

### D. Plaintiff Failed to Plead Interference

Besides failing to plausibly plead severe or pervasive conduct, Plaintiff also failed to plead that the alleged "harassment unreasonably interfere[d] with" Plaintiff's "work performance." *Jones v. Sun Pharm. Indus., Inc.*, No. 3:19-cv-566, 2020 WL 2501439, at *8 (E.D. Va. May 14, 2020) (Lauck, C.J.) (quotations and citations omitted) (alteration in original) (dismissing hostile work environment claim due to failure to plead interference). Plaintiff pled the opposite: that he "consistently met Defendant's performance expectations." (Am. Compl. at 4, ¶ 19).

## VII. THE STATE CLAIMS (COUNT V AND VI) FAIL

Plaintiff's Amended Complaint includes two state law claims: defamation and IIED. Both of these claims fail as a matter of law.

### A. The Defamation Claim is Untimely

Plaintiff's defamation claim is time-barred. Virginia's statute of limitations as applied to defamation and libel is one year. Virginia Code § 8.01-247.1. The alleged defamatory statements were made at the time Plaintiff was placed on leave and referred to EAP, in January 2024. Given that Plaintiff did not file suit until October 29, 2025, his claim is far outside the statute of limitations.

### B. The IIED Claim Fails

To state a plausible IIED claim, a complaint must allege, among other elements, that the

conduct was outrageous or intolerable. *Ogunde v. Prison Health Servs., Inc.*, 274 Va. 55, 65 (2007). More particularly, the alleged conduct must be so intolerable and outrageous that it "offends against the generally accepted standards of decency and morality." *Jordan v. Shands*, 255 Va. 492, 498 (1998). A court is not required to accept conclusory allegations in its review of an intentional infliction of emotional distress claim. *Ogunde*, 274 Va. at 66.

Here, the conduct Plaintiff alleges supports his IIED claim is the same as that which supports his claim for a hostile work environment. However, as discussed above, the conduct alleged by Plaintiff is not severe or pervasive. It therefore certainly does not rise to the level of outrageous and intolerable conduct required to maintain a claim for IIED.

## VIII. MR. WEDDING SHOULD NOT BE AFFORDED FURTHER LEAVE TO AMEND

Plaintiff requested, and received, the opportunity to amend his complaint after he represented to the Court that he could "cure any pleading deficiencies." (ECF No. 14-2 at 11). Additionally, this Court already outlined the pleading standard at great length. (ECF No. 16 at 6). Although Plaintiff is proceeding *pro se,* two extensive pleading efforts have already given Plaintiff more than sufficient opportunity to plead his claims. *Stewart v. Holder*, No. 1:16-cv-682, 2017 WL 4479612, at *10 (E.D. Va. July 19, 2017) (holding that the *pro se* plaintiff's failure to allege facts establishing a plausible claim after multiple pleading efforts "require[d] denial of leave to amend"), *aff'd*, 710 F. App'x 120 (4th Cir.), *cert. denied*, 139 S. Ct. 217 (2018). Should the Court grant HII's Motion to Dismiss, the Court also should decline to afford Plaintiff leave to further amend.

## CONCLUSION

HII requests that the Court dismiss the entirety of Plaintiff's Amended Complaint with prejudice.

Dated: September 8, 2026

Respectfully submitted,

By: */s/ Sharon Kerk Reyes*
Sharon Kerk Reyes (VSB No. 87701)
KAUFMAN & CANOLES, P.C.
150 West Main Street, Suite 2100
Norfolk, VA 23510
T: (757) 624-3000
F: (888) 360-9092
skreyes@kaufcan.com

*Counsel for Defendant*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 8th day of September, 2026, I will electronically file the foregoing document with the Clerk of the Court using the CM/ECF system, and I hereby certify that I will mail the document by First-Class mail, postage prepaid, with a courtesy copy via electronic mail, to the following non-filing user:

Kitron A. Wedding, *pro se*
1001 Gayley Avenue Unit # 24724
Los Angeles, CA 90024
samphone2025@proton.me
*Pro Se Plaintiff*

By: */s/ Sharon Kerk Reyes*
Sharon Kerk Reyes (VSB No. 87701)
KAUFMAN & CANOLES, P.C.
150 West Main Street, Suite 2100
Norfolk, VA 23510
T: (757) 624-3000
F: (888) 360-9092
skreyes@kaufcan.com

*Counsel for Defendant*